442 N.W.2d 328 (1989)
In the Matter of the Amended Administrative Penalty Order to WESTLING MANUFACTURING, INC., Princeton, Minnesota.
No. C1-89-83.
Court of Appeals of Minnesota.
June 27, 1989.
Review Denied August 25, 1989.
*329 William L. Lucas, Harvey, Thorfinnson, Scoggin, Lucas & Kallas, P.A., Eden Prairie, for Westling Mfg., relator.
Hubert H. Humphrey, III, Atty. Gen., Joseph G. Maternowski, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Minnesota Pollution Control Agency, respondent.
Heard, considered and decided by HUSPENI, P.J., and NIERENGARTEN and CRIPPEN, JJ.

OPINION
HUSPENI, Judge.
Relator Westling Manufacturing, Inc. (Westling) appeals the Commissioner's refusal to estop respondent Minnesota Pollution Control Agency (MPCA) from finding Westling in violation of hazardous waste documentation requirements. We affirm.

FACTS
Westling produces hazardous wastes in the process of rebuilding auto parts, and must comply with documentation requirements for personnel working with the waste. In 1982 John Goslinga became Westling's Environmental Protection Agency compliance officer and was responsible for monitoring Westling's compliance with the hazardous waste rules.
Between 1982 and 1986 MPCA inspected Westling's premises and noted various violations. Agency specialists then worked with Westling to help it comply with the rules. An April 1986 inspection was followed by a May 15, 1986, letter written by MPCA specialist Donna Portner informing Westling that compliance with the rules required it to "develop and implement a personnel training program." Portner's letter cited the applicable Minnesota rules by number and specifically stated "Documentation of personnel training is required." Her letter described the required documentation. Goslinga's written reply a month later stated "our personnel training program will be documented."
In July 1986, Goslinga mailed Portner various documents including an eight item list labeled "[Personnel] Training Program." This conformed neither to the specifications set out in Portner's letter nor to the cited rule. In an October 8, 1986, phone call, Portner discussed the plan's defects with Goslinga and told him to re-submit a modified training plan containing the required information. She also sent *330 Goslinga an address from which he could obtain copies of the hazardous waste rules and a page cite to the specific rule on personnel training programs.
On October 31, 1986, Westling submitted a seven item list entitled "Annual Personnel Training Program Outline." This document, while remedying some of its predecessor's failures, was found by the Administrative Law Judge (ALJ) to be less detailed than the one Westling submitted in July.
In a letter dated September 15, 1987, Portner requested that Goslinga send the agency documented new and annual employee training records. Soon after sending this letter, Westling's MPCA file was assigned to Patricia Leach. Two weeks later, the agency received "sample" training documents from Westling including the same eight item list submitted in July 1986. No documented employee training records were submitted.
On October 12, 1987, Leach sent a letter to Goslinga stating
Based on the information you provided [in your letter] Westling Manufacturing Company is currently in compliance with the requirements of the Minnesota Hazardous Waste Rules. Please be aware that during future inspections your records will be reviewed to verify that you are documenting weekly inspections and personnel training.
Subsequently, during an arranged inspection of Westling's premises, its personnel director was asked to produce documentation of employee training. The inspectors, upon being shown two copies of the eight item list, told the personnel director that these documents were inadequate to meet the requirements under the rule. As a result, the MPCA Commissioner issued an administrative penalty order.
At a hearing in which Westling contested the penalty order, the ALJ found the training documents to be insufficient under the rule. However, the ALJ also estopped MPCA from assessing any violations of that rule because of Leach's letter. The Commissioner, noting that the ALJ made no finding of governmental misconduct, refused to estop MPCA from determining a violation. Westling seeks review of the Commissioner's decision.

ISSUES
1. What is the standard of review?
2. Did the Commissioner use the correct standard to determine the applicability of equitable estoppel?
3. Did the Commissioner err by failing to equitably estop the MPCA from finding Westling in violation of hazardous waste documentation requirements?

ANALYSIS

I.
Generally, where an agency's conclusions are
based on legal rather than factual considerations, the reviewing court is not bound by the decision of the agency and need not defer to agency expertise.
No Power Line, Inc. v. Minnesota Environmental Quality Council, 262 N.W.2d 312, 320 (Minn.1977). However, "[a] reviewing court will defer to an administrative agency when the agency is performing its function as a factfinder." Bouza v. Gallagher, 416 N.W.2d 126, 128 (Minn.Ct. App.1987), pet. for rev. denied (Minn. Feb. 12, 1988).
When reviewing a final agency order [this] court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are:
* * * * * *
(d) Affected by other error of law; or
(e) Unsupported by substantial evidence in view of the entire record as submitted;
Minn.Stat. § 14.69 (1988). On appeal, both parties allege that equitable estoppel is a matter of law and Westling urges application *331 of section 14.69(d) to support its arguments.
It has been stated:
When this court reviews an agency's ruling on a legal question, we are not bound by the agency's ruling. The application of equitable estoppel is a question of law. Therefore, the commissioner's ruling on the application of equitable estoppel to the facts of this case is subject to this court's independent review.
Department of Human Services v. Muriel Humphrey Residences, 436 N.W.2d 110, 117 (Minn.Ct.App.1989), pet. for rev. denied (Minn. April 26, 1989) (citations omitted). See also City of Eden Prairie v. Liepke, 403 N.W.2d 252, 254 (Minn.Ct.App. 1987); Petition of Halberg Construction & Supply Inc., 385 N.W.2d 381, 383 (Minn. Ct.App.1986), pet. for rev. denied (Minn. June 19, 1986); Alwes v. Hartford Life and Accident Insurance Co., 372 N.W.2d 376, 378 (Minn.Ct.App.1985); Beaty v. Minnesota Board of Teaching, 354 N.W.2d 466, 470 (Minn.Ct.App.1984).
However, the Minnesota Supreme Court has stated:
Estoppel depends on the facts of each case and is ordinarily a fact question for the jury to decide. * * * The jury's verdict will not be disturbed on appeal unless it is manifestly and palpably contrary to the evidence.
Northern Petrochemical Co. v. United States Fire Insurance Co., 277 N.W.2d 408, 410 (Minn.1979) (citation omitted). See also Brenner v. Nordby, 306 N.W.2d 126, 127 (Minn.1981); Bethesda Lutheran Church v. Twin City Construction Co., 356 N.W.2d 344, 349, pet. for rev. denied (Minn. Feb. 5, 1985); Sohns v. Pederson, 354 N.W.2d 852, 854 (Minn.Ct.App.1984).
We reconcile the apparent discrepancy regarding the nature of equitable estoppel with the supreme court's statement that:
While estoppel is ordinarily a question of fact for the jury, * * * when only one inference can be drawn from the facts, the question is one of law.
L & H Transport, Inc. v. Drew Agency, Inc., 403 N.W.2d 223, 227 (Minn.1987) (citation omitted); Thorson v. Rice County District One Hospital, 437 N.W.2d 410, 416 (Minn.1989). In Humphrey, after examining the justifications for applying estoppel against the government, this court concluded that "the rationales that justify a restrictive application of estoppel are inapplicable." Id., 436 N.W.2d at 118. Thus Humphrey was decided on a purely legal theory.
Other cases which address estoppel as a question of law are consistent with the analysis set forth in Drew and Thorson. In Liepke, after issuance of a building permit, subsequent construction inspections, and when a building was 90% complete, authorities halted construction because of violation of municipal ordinance. Halberg involved a trucking company which, for thirteen years, believed that its permit allowed statewide deliveries. The ALJ in Halberg, despite a specific finding that the order geographically limiting the permit did not reach the company, still found the company in violation. In Alwes, a disabled employee stated his disability on his employers' information questionnaire. When the employee died as a result of his disability, the insurer refused to pay benefits to his spouse. Finally, in Beaty, coursework for certification was suggested, paid for and successfully completed but certification was denied. In each of these cases, this court estopped the relevant party from asserting a position inconsistent with its prior conduct. The facts of these cases allowed only one reasonable inference and under Drew and Thorson equitable estoppel was a question of law.
Because the facts of this case do not permit only one conclusion, we shall review the denial of equitable estoppel here as a fact question. "[When] reviewing an agency's factual findings courts should use the substantial evidence test." Matter of Minnesota Joint Underwriting Association, 408 N.W.2d 599, 605 (Minn.Ct.App. 1987). Under this standard,
The test for determining whether a specific finding is supported by substantial evidence is whether the evidence, considered in its entirety, is (1) more than a scintilla of evidence; (2) such that a reasonable *332 mind might accept it as adequate to support a conclusion; or (3) more than "some evidence" and more than "any evidence."
State By McClure v. Sports and Health, 370 N.W.2d 844, 848-49 (Minn.1985).

II.
The supreme court has stated "[t]o estop a government agency, some element of fault or wrongful conduct must be shown." Brown v. Minnesota Department of Public Welfare, 368 N.W.2d 906, 910 (Minn.1985) (emphasis added) (citing Ridgewood Development Co. v. State, 294 N.W.2d 288, 292-93 (Minn.1980)). Westling alleges that the Commissioner erred in addressing only the "stricter criterion of wrongful conduct" and not also considering the "existence of fault on the part of Agency staff." This argument assumes that "fault" is a basis for estoppel separate from "wrongful conduct."
We cannot accept Westling's underlying presumption. Although Brown uses the phrase "fault or wrongful conduct," those concepts are discussed more fully in Ridgewood.
[O]ther jurisdictions generally require some fault by the government agency whose action is sought to be estopped. According to the basic treatise on equity, inducement is central to the concept of equitable estoppel, a judicial remedy in which one party to a controversy is precluded because of some improper action on his part from asserting a particular claim or defense * * *.
Ridgewood, 294 N.W.2d at 292-93 (emphasis in original) (citations omitted) (footnote omitted). The Ridgewood court's emphasis leads to a proper inference that affirmative misconduct is required to estop the government. Such requirement is inconsistent with the distinction urged by Westling which would produce a second standard requiring not affirmative misconduct, but instead allowing estoppel based on inadvertent, mistaken or imperfect (i.e. "faulty") conduct of the government.
The inference from Ridgewood that affirmative misconduct is required to estop the government is also consistent with that court's subsequent statement that
the court must first look for the government's wrongful conduct. Only if it is found does the balancing begin. Here there is no wrongful governmental conduct; * * * [t]hus the most important element of equitable estoppel [when applied against the government] is missing.
Ridgewood, 294 N.W.2d at 293 (emphasis added). Similarly, the Brown court refused to estop the government because, inter alia, "the Department did not engage in any wrongful conduct." Brown, 368 N.W.2d at 912 (emphasis added). Both Brown and Ridgewood base their holdings on lack of "wrongful conduct," while neither indicates that "fault" is not synonymous with "wrongful conduct."
There are additional flaws implicit in Westling's argument that estoppel based on "fault" requires a lesser showing than estoppel based on "wrongful conduct." Initially, it is logically inconsistent to have two standards, one more strict than the other, either of which may be satisfied to achieve a particular result. Further, Westling's argument that "fault" is a lesser standard is inconsistent with case law indicating that equitable estoppel is not to be "freely applied against the government," Mesaba Aviation Division of Halvorson of Duluth, Inc. v. Itasca County, 258 N.W.2d 877, 880 (Minn.1977) and that the party attempting such estoppel "has a heavy burden of proof." Ridgewood, 294 N.W.2d at 292; see also Mesaba, 258 N.W.2d at 880-81 ("[I]f a specific representation is authoritatively made to and invites reliance by a taxpayer and the taxpayer's consequent change of position makes it inequitable to retract the representation, estoppel may lie.") (footnote omitted) (emphasis added).
We reject Westling's argument that "fault" is a basis for estopping the government separate from "wrongful conduct," and we recognize as appropriate the Commissioner's analysis finding no "wrongful conduct" but not specifically addressing possible "faults" of MPCA employees.

*333 III.
The supreme court has described estoppel as:
an equitable doctrine addressed to the discretion of the court and * * * intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights. To establish a claim of estoppel, plaintiff must prove that defendant made representations or inducements, upon which plaintiff reasonably relied, and that plaintiff will be harmed if the claim of estoppel is not allowed.
Brown, 368 N.W.2d at 910 (quoting Northern Petrochemical Co. v. United States Fire Insurance Co., 277 N.W.2d 408, 410 (Minn.1979)).
The government may be estopped if justice requires, but this court has said that it does not "envision that estoppel will be freely applied against the government." To estop a government agency, some element of fault or wrongful conduct must be shown. A plaintiff seeking to estop a government agency has a heavy burden of proof. When deciding whether estoppel will be applied against the government, the court will weigh the public interest frustrated by the estoppel against the equities of the case.
Brown, 368 N.W.2d at 910 (citations omitted). Westling alleges that the requirements for estoppel based on wrongful conduct have been met. We disagree.

A. GOVERNMENT MISCONDUCT
The supreme court has stated that in attempting to estop a governmental agency, the agency's wrongful conduct is "the most important element," and "only if it is found to exist does the balancing begin." Ridgewood, 294 N.W.2d at 293. Although the ALJ did not specifically address agency misconduct, the Commissioner stated:
the administrative record does not demonstrate any wrongful conduct on the part of Agency staff, on the contrary, the staff attempting to help the Company to come into compliance with the recordkeeping requirements relating to personnel training.
This determination is consistent both with the record and with Westling's allegations and deserves deference. McClure, 370 N.W.2d at 848-49. Neither the record nor Westling's allegations indicate that the MPCA acted or attempted to act beyond its statutorily authorized duties. Both indicate that MPCA invested substantial time over a period of years attempting to help Westling comply with the hazardous waste rules.
Westling argues that because the agency's letter indicated compliance with the relevant rules, the agency knew it would find a violation when it conducted an inspection and that is why the inspection was, in fact, made. Westling's argument is contradicted by the Commissioner's statement that the agency attempted to "help" Westling comply with the rules. The Commissioner's statement is consistent with the record. Westling's bad faith argument is unpersuasive.

B. REPRESENTATION  REASONABLE RELIANCE
The supreme court has stated:
Whether an administrative officer is authorized to make a representation is an important consideration in determining whether the government should be estopped from contesting the accuracy of that representation.
Mesaba, 258 N.W.2d at 879. Here, the contested MPCA letter was authored by Leach. As the MPCA officer in charge of Westling's file, her authority to issue such a letter is uncontested. Westling asserts that the letter was a "clear and unqualified" representation that its documentation was sufficient under the rules. We find Westling's reading of the letter to be unduly broad. The reference to document verification during future inspections indicates that any finding of compliance would be qualified by or conditioned upon the results of that inspection.
Additionally,
[T]hose who deal with Government are expected to know the law and may not rely on the conduct of government agents contrary to law. *334 Brown, 368 N.W.2d at 912 (quoting Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984)). Both parties agree that the reasonableness of Westling's reliance must be examined in light of the parties' prior communications.
Finally, although a party may generally rely upon notification from the agency charged with interpreting and enforcing the relevant rules that documentation submitted for approval was sufficient, even such appropriate reliance does not automatically allow estoppel of a governmental entity. See Mesaba, 258 N.W.2d 877 (written representation by government that property would not be subject to taxation did not automatically estop government from collecting tax on the property). Here, communications between the parties took place over an extended period of time. Contradictory information emanated from the MPCA regarding the appropriateness of the training documentation originally submitted in July 1986. In consideration of all these circumstances, we cannot find Westling's reliance on the portion of Leach's letter suggesting compliance to be reasonable. A lack of governmental misconduct or a failure to demonstrate a reasonable reliance are generally sufficient to preclude application of equitable estoppel. Both are present here.

DECISION
"Fault" is not a basis for equitable estoppel separate from "wrongful conduct," and the Commissioner's failure to distinguish between the two was not error. Additionally, in review of the application of equitable estoppel as a question of fact, the lack of governmental misconduct and failure to demonstrate reasonable reliance on the MPCA's letter of October 12, 1987 support the Commissioner's refusal to estop a finding of a violation of the rules regarding hazardous waste training documentation.
Affirmed.