CITY OF NORTH OAKS, Appellant,

v.

Rajbir S. SARPAL, et al., Respondents.

No. A09–1961.

Court of Appeals of Minnesota.

July 20, 2010.

859

Leonard J. Schweich, Susan Steffen Tice, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for appellant.

David J. Szerlag, Pritzker Olsen, P.A., Minneapolis, MN, for respondents.

Considered and decided by WORKE, Presiding Judge; HALBROOKS, Judge; and STAUBER, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's conclusion that it is prevented by the doctrine of equitable estoppel from requiring respondents to relocate a shed they built on their property in 2006. Because we conclude that the district court did not abuse its discretion, we affirm.

## FACTS

Respondents Drs. Rajbir and Carol Sarpal purchased a lot located in appellant City of North Oaks in July 2003. A short while later, they constructed a home on the lot. In 2005, they had an in-ground swimming pool installed. The Sarpals hired professionals to build their home and install the pool. But in 2006, Rajbir Sarpal (Sarpal) decided to construct a garden/pool shed without hiring a general contractor. As he began the process, Sarpal went to the city to obtain a building permit. The city informed him that he would first need to get approval from the Architectural Supervisory Committee (ASC) of the North Oaks Homeowners Association (NOHOA). After providing an initial submission regarding his plans to construct the shed, Sarpal was informed in a letter from ASC that it needed additional information in order to complete its review, including, among other things, "[a]n as-built survey with the location of the pool, pool equipment, fences and water feature."

ASC suggested that Sarpal could possibly obtain an as-built survey from the builder that constructed his home or the company that surveyed the property before construction, but Sarpal was unable to do so. Sarpal was also told by NOHOA

that the city might have a survey in its files. So Sarpal took the letter from ASC and went to the city offices to inquire about obtaining the required survey. Sarpal asked a city employee for an as-built survey and showed her the ASC letter. She handed Sarpal a survey dated 2003 that was apparently commissioned before the installation of a septic system on the property. Sarpal asked the city employee, "Is this the survey I need?" to which she responded, "Yes." It is undisputed that this survey was not, in fact, an "as-built" survey because it was prepared before the construction of both the home and the pool. The house on this survey is labeled "proposed house," and it is also undisputed that the house was actually constructed in a different location. But Sarpal was not aware of these facts.

Sarpal drew the proposed shed on this survey to submit to ASC. He also drew in measurement lines from the proposed house to the proposed shed. His depiction shows the proposed shed as avoiding the 30–foot setback area. He submitted this drawing to ASC, and ASC approved his plan. Once ASC approved the plan, Sarpal went back to the city to obtain a building permit, and the city approved a building permit for the shed. Because Sarpal was going to act as his own general contractor, he was required to sign a waiver that stated, "I am solely and personally responsible for any violations of the State Building Code and/or jurisdictional Ordinance in connection with the work performed on this property."

Sarpal then proceeded to construct the shed. He measured the location of the shed from his home, using the measurements that he had calculated based on the location of the proposed home on the 2003 survey. Because the house was not built where it was proposed to be built, the shed encroached onto the setback approximate-ly 15 feet. In a memorandum to the city, a city building official explained that

both NOHOA, and ourselves, review and approve site plans based on the information presented. It is the applicant[']s responsibility to make sure that structures are in the right place. We do not currently require the placement of property line stakes for accessory structures, therefore in the field, we can only use for reference the same thing the owner did, that is the existing building. Based on the house location, the shed location is correct as submitted. The problem is, the house is not in the location shown on his submittal.

In September 2007, the city sent the Sarpals a letter, explaining the encroachment and requesting that they move the shed within 30 days. In response, the Sarpals commissioned their own survey, disbelieving that the shed could violate the setback because Sarpal had followed the approved plans exactly. After the survey showed that the shed indeed violated the setback, the Sarpals applied for a variance. The variance was denied due to a lack of undue hardship; the variance denial was not appealed by the Sarpals. The Sarpals then sought an extension of time in which to move the shed because "[m]oving the structure entails moving sprinkler heads and valves, removing fence posts and pouring a new foundation" and that those tasks would be difficult at that time of the year. This request was granted with several conditions. But ultimately, the Sarpals did not move the shed.

In April 2008, the city brought a petition for injunctive relief, seeking a court order requiring the Sarpals to relocate their shed. The Sarpals answered and raised the affirmative defense of equitable estoppel, among others. The parties cross-moved for summary judgment, and after a hearing on the motions, the district court

denied both motions. The district court found that "genuine issues of material fact remain on the question of wrongful conduct on the part of [the city] and, therefore, . . . Summary Judgment is not appropriate." The district court stated that "[i]f the city acted in a wrongful manner, the city may be estopped from enforcing its zoning ordinance."

A bench trial was held. After hearing testimony from Sarpal and from a city building official, the district court held that the Sarpals had established the facts necessary to assert the defense of equitable estoppel against the city. The district court concluded that "[p]roviding the Sarpals with inaccurate documentation, failing to competently review the building permit application, failing to place the Sarpals on notice of the error, and approving the Shed application constitutes wrongful conduct on North Oaks['] part." The district court reasoned that "[t]he imposition of equitable estoppel prevents the injustice that is bound to occur if the Sarpals are forced to incur the extensive expenses and obligations of relocating or removing the Shed, especially after the significant time and money expended on the initial construction of the Shed." This appeal follows.

## ISSUES

I. What is the proper standard of review?

II. Are the Sarpals entitled to an equitable-estoppel defense?

## ANALYSIS

### I. Standard of Review

#### A. Summary Judgment

■ The city has appealed both the district court's denial of its motion for summary judgment and the entry of judgment in favor of the Sarpals after the bench trial. Although both parties discuss the standard of review on appeal from summary judgment, neither party addresses whether a district court's denial of a motion for summary judgment is within this court's scope of review after there has been a trial and a decision on the merits.

The Minnesota Supreme Court has held that the denial of a motion for summary judgment is outside the scope of an appellate court's review when a trial has been held and the parties have been given a full and fair opportunity to litigate their claims. *Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 918–19 (Minn.2009). Although an appellate court has the authority to review orders that affect the judgment being appealed under Minn. R. Civ. App. P. 103.04, the denial of a motion for summary judgment in a case that proceeds to trial cannot be viewed as affecting the judgment being appealed "because the district court's conclusion at the summary judgment stage that there was a genuine dispute of fact becomes moot once the jury reaches a verdict on that issue." *Id.* at 918. Although *Bahr* involved a jury trial rather than a bench trial, we decline to distinguish *Bahr* on this basis. Whether the fact-finder is a judge or a jury, "it makes no sense . . . to reverse a judgment . . . where the trial evidence was sufficient merely because at summary judgment it was not." *Id.* (quotation omitted).

The supreme court noted that there may be an exception if the denial of summary judgment was based on purely legal grounds. *Id.* at 918 n. 9 (recognizing the possibility of such an exception). But that was not the basis for the district court's denial here. The district court specifically determined that there was a genuine issue of material fact with respect to whether or not the city committed a wrongful act. Because the district court did not deny the city's motion on a purely legal basis, the possible exception to the limits of our scope of review is not applicable, and the district court's decision to deny the city's

motion for summary judgment is not within our scope of review.

### B. Bench Trial

The parties disagree about the proper standard of review on appeal from a bench trial. In general, the standard of review following a bench trial depends on whether the issues being appealed are purely legal issues, questions of fact, or mixed questions of law and fact.

> In an appeal from a bench trial, we do not reconcile conflicting evidence. We give the district court's factual findings great deference and do not set them aside unless clearly erroneous. However, we are not bound by and need not give deference to the district court's decision on a purely legal issue. When reviewing mixed questions of law and fact, we correct erroneous applications of law, but accord the [district] court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard.

*Porch v. Gen. Motors Acceptance Corp.*, 642 N.W.2d 473, 477 (Minn.App.2002) (alteration in original) (quotation and citations omitted), *review denied* (Minn. June 26, 2002).

But our determination of the proper standard of review does not end here. There is conflicting authority as to whether equitable estoppel is a question of fact or a question of law. *Compare In re Westling Mfg., Inc.*, 442 N.W.2d 328, 331 (Minn.App.1989) ("Estoppel depends on the facts of each case and is ordinarily a fact question for the jury to decide. The jury's verdict will not be disturbed on appeal unless it is manifestly and palpably contrary to the evidence." (quotation omitted)), *review denied* (Minn. Aug. 25, 1989), *with State, City of Eden Prairie v. Liepke*, 403 N.W.2d 252, 254 (Minn.App.1987) ("The application of equitable estoppel is a question of law."). In *Westling*, we identi-

fied the seemingly contradictory case law regarding whether equitable estoppel is a factual or legal inquiry and "reconcile[d] the apparent discrepancy regarding the nature of equitable estoppel with the supreme court's statement that '[w]hile estoppel is ordinarily a question of fact for the jury, when only one inference can be drawn from the facts, the question is one of law.'" 442 N.W.2d at 331 (quoting *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 227 (Minn.1987)). We concluded that "[b]ecause the facts of this case do not permit only one conclusion, we shall review the denial of equitable estoppel here as a fact question." *Id.* We then reviewed the agency's decision to determine if it was supported by substantial evidence. *Id.* We have reiterated the standard of review articulated in *Westling* more recently. "When the facts permit only one conclusion, the application of equitable estoppel is a question of law subject to de novo review." *Concept Props., LLP v. City of Minnetrista*, 694 N.W.2d 804, 821 (Minn.App.2005), *review denied* (Minn. July 19, 2005).

As in *Westling*, we conclude that the facts of this case permit more than one conclusion. The city's actions were not so egregious as to make the wrongful-conduct element of equitable estoppel obvious. But neither is this a case in which the city can claim no responsibility for the Sarpals' error. Unlike *Westling*, this case involves a bench trial, not an administrative hearing; therefore, the substantial evidence test is inappropriate. Accordingly, we will adopt the standard of review generally used for bench trials involving mixed questions of law and fact—abuse of discretion. *See Porch*, 642 N.W.2d at 477; *see also Prairie Island Indian Cmty. v. Minn. Dep't of Pub. Safety*, 658 N.W.2d 876, 890 (Minn.App.2003) ("Estoppel is an equitable doctrine 'addressed to the trial court's discretion, and which is not freely applied

against the government.'" (quoting *In re REM–CANBY, Inc. v. Dep't of Human Servs.*, 494 N.W.2d 71, 74 (Minn.App.1992), *review denied* (Minn. Feb. 25, 1993))).

## II. Equitable-estoppel Defense

At the outset, we note that equitable estoppel should be used sparingly against the government. *Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 293–294 (Minn.1980). We also recognize that the city is correct in its assertion that it bears no legal responsibility for the Sarpals' error. Sarpal signed a valid waiver, agreeing to be responsible for compliance with the city's ordinances, including the setback. And the city did not technically err by approving the plan as submitted by Sarpal, which shows the shed avoiding the setback. But holding the Sarpals responsible for using the wrong survey is not a just result when Sarpal was provided with the survey by a city employee and was affirmatively told that he was using the proper survey. It is precisely this type of unjust legal result that creates the need for certain equitable remedies. *See Shetka v. Aitkin Co.*, 541 N.W.2d 349, 353 (Minn.App.1995), *review denied* (Minn. Feb. 27, 1996). Because we conclude that the Sarpals' legal liability for the encroachment does not foreclose their ability to successfully estop the city from enforcing its setback, we turn to the elements of equitable estoppel.

A person alleging equitable estoppel against a government entity must prove that (1) the government engaged in wrongful conduct, (2) the person reasonably relied on the government's conduct, (3) the person incurred a unique expenditure, and (4) a balancing of the equities favors estoppel. *Ridgewood*, 294 N.W.2d at 292–93. The parties agree on the application of the *Ridgewood* test, but disagree as to whether three of the four elements

have been met; they do not dispute that the Sarpals incurred a unique expenditure.

## A. Wrongful Conduct

The threshold question when analyzing an equitable-estoppel defense is whether the government's act or omission that induced reliance was "wrongful." *Id.*; see also *Interstate Power Co. v. Nobles County Bd. of Comm'rs*, 617 N.W.2d 566, 576 (Minn.2000). An equitable-estoppel defense against a government entity's action generally requires some fault by the government agency whose action is sought to be estopped. *Ridgewood*, 294 N.W.2d at 292–93. Further analysis is required only if wrongful conduct is found to exist. *Id.* at 293. The supreme court has noted that the wrongful-conduct element has been interpreted since *Ridgewood* as requiring some degree of malfeasance. *Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 771 (Minn.2006).

With respect to the city's conduct, the district court concluded:

> North Oaks knew that the Sarpals needed an as-built survey and, upon the Sarpals' request, provided the Sarpals with the [2003] Survey contained in a group of documents titled "As Built Report." North Oaks led the Sarpals to believe that the [2003] Survey they used in forming the building plans, acquiring the building permit, and ultimately completing the construction of the Shed was an accurate as-built survey. Providing the Sarpals with inaccurate documentation, failing to competently review the building permit application, failing to place the Sarpals on notice of the error, and approving the Shed application constitutes wrongful conduct on North Oaks['] part.

> North Oaks' representations to the Sarpals with regard to the as-built survey constitute government advice.

■ Whether or not the government's conduct meets the first element of an equitable-estoppel defense is determined on a case-by-case basis. The city argues that its conduct does not rise to the level of malfeasance required to satisfy the first element of the *Ridgewood* test. Relying on *Northernaire Prods. Inc. v. County of Crow Wing*, 309 Minn. 386, 389–90, 244 N.W.2d 279, 281 (1976), the city claims that "[w]here a city makes a good faith, albeit erroneous, representation regarding a zoning matter, a plaintiff cannot generally meet the degree of seriousness required to support a finding of wrongful government conduct." But *Northernaire* involved a claim for damages based on negligent misrepresentation by a county official. It did not involve an equitable-estoppel defense. Accordingly, *Northernaire* does not stand for the proposition that a good-faith erroneous representation regarding a zoning matter cannot support an equitable-estoppel defense.

The city also argues that it did not engage in wrongful conduct because, unlike ASC or NOHOA, it does not require an as-built survey in its permitting process. It only requires a site plan depicting the location of the proposed project, which it then reviews to confirm that the location of the proposed project conforms to the city's zoning ordinances. As submitted, the location of the Sarpals' proposed shed does not violate the setback. It is not clear to us that, standing alone, the approval of a building permit based on an incorrect submission would be sufficient to estop the city from enforcing its zoning law once the error was discovered. In this situation, because the city is entitled to rely on the accuracy of the documents submitted by the contractor or landowner, the wrongful-conduct element of equitable estoppel may not be met.

But we view the city's act of approving the building permit in context with the act of telling Sarpal that he was using the correct survey. In *Ridgewood*, the supreme court implicitly recognized that erroneous government advice could give rise to an equitable-estoppel defense. 294 N.W.2d at 293 ("Here there is no wrongful governmental conduct; no governmental official has given improper advice."). Sarpal's undisputed testimony established that he showed the person at the city office a copy of the letter from ASC indicating that he needed an "as-built" survey, that the person handed him the survey with a proposed house drawn on it, and that the person confirmed that this was the survey that Sarpal needed to use in order to get approval from the ASC. In addition, the city failed to identify this possible mistake in its permit-approval process. We conclude that the district court did not abuse its discretion by determining that these actions were sufficient to establish the first element of an equitable-estoppel defense against the government—wrongful conduct.

## B. Reasonable Reliance

■ The Sarpals must also prove that the city "made representations or inducements, upon which [they] reasonably relied." *Westling*, 442 N.W.2d at 333 (quotation omitted). It is undisputed that Sarpal relied on the city's representation that the survey it provided to him was the correct survey to use. The pertinent question is whether Sarpal's reliance was reasonable. As a general rule, "[t]hose who deal with Government are expected to know the law and may not rely on the conduct of government agents contrary to law." *Id.* Nonetheless, "a party may generally rely upon notification from the agency charged with interpreting and enforcing the relevant rules." *Id.* at 334.

The city insists that it was unreasonable for Sarpal to base the shed's location on

the location of his house because the plain language of the city's zoning ordinance requires a landowner to measure from the lot line. But that is not what the ordinance requires. The plain language of the ordinance requires the setback to be from the lot line, but the ordinance is completely silent as to how compliance or non-compliance with the setback is to be determined. North Oaks, Minn., City Code § 151.050(F)(1) (2007). Because the ordinance does not require a property owner to measure from the lot lines before placing a structure, we conclude that Sarpal's technique of measuring from the house was reasonable.

The city also argues that Sarpal's reliance on the city's representation that the survey was an as-built survey was unreasonable because the survey is dated before the construction of the house and the house is labeled "proposed house." But this argument is undermined by the fact that nobody on ASC or at the city noticed that Sarpal was indicating his measurement lines from a "proposed house." Because Sarpal was specifically told by the city to use that particular survey and there is nothing in the record that would indicate that Sarpal had reason to know that the house was not built in its proposed location, his use of the survey to measure how far the shed should be from the house was also reasonable. Finally, because Sarpal's mistake was not recognized by any of the experienced land-use officials who were involved in the approval process, we disagree with the city's contention that Sarpal should have realized his error. Because Sarpal reasonably relied on the city's representation regarding the 2003 survey, we conclude that the district court did not abuse its discretion by determining that this element of the Sarpals' equitable-estoppel defense was met.

■ The city also argues on appeal that the city clerk who handed Sarpal the survey was not authorized to make representations with respect to zoning or permitting requirements. Neither party presented evidence as to this person's identity or position within the city. Because the city did not raise this objection in the district court, it has waived this argument. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988).

## C. Equitable Considerations

■ Finally, we turn to a balancing of the equities. "Estoppel is available as a defense against the government if the government's wrongful conduct threatens to work a serious injustice and if the public's interest would not be unduly damaged by the imposition of estoppel." *Ridgewood,* 294 N.W.2d at 293 (quotation omitted); *see also In re Petition of Mesaba Aviation Div. of Halvorson of Duluth, Inc. v. County of Itasca,* 258 N.W.2d 877, 880 (Minn. 1977). The city claims that "ample evidence exists of the detriment to the 'public good' and 'frustration of the public interest' " that would occur if it is estopped from enforcing its setback. Conversely, it claims that the district court's findings with respect to the harm that would be suffered by the Sarpals if they are forced to move the shed "lack[ ] an evidentiary basis."

■ It is true that the public has an interest in the enforcement of zoning ordinances to ensure uniform and equitable application of the law, minimize nuisances, and protect property values. *See Dege v. City of Maplewood,* 416 N.W.2d 854, 857 (Minn.App.1987). To estop the city from enforcing its current zoning ordinance would contravene these interests. But this broad public interest in zoning ordinances is the only interest the city has identified. The city presented no evidence of harm to an adjoining landowner, there have been no complaints to the city, and

the city has not identified any other public interest that would be "unduly damaged" if it is estopped from enforcing its zoning ordinance against the Sarpals. Accordingly, the city's interest does not carry much weight in a balancing of the equities.

Further, we do not agree that the conclusions that the Sarpals would be "forced to incur ... extensive expenses and obligations [in] relocating or removing the Shed" and that they expended "significant time and money ... [on] the initial construction of the Shed" are without evidentiary support. A letter from Sarpal to the city council stating that "[m]oving the structure entails moving sprinkler heads and valves, removing fence posts and pouring a new foundation" was admitted into evidence at trial. The building permit issued by the city with an estimated cost of $2,500 to build the shed and permit fees of approximately $200 was also admitted at trial. And finally, an affidavit from Sarpal estimating that the cost to move the shed would be a figure between $10,000 and $20,000 was admitted at the summary-judgment phase.

The city relies primarily on the fact that Sarpal admitted both in his request for a variance and in his trial testimony that moving the shed would not cause the Sarpals financial hardship to claim that there is no equity weighing in favor of the Sarpals. But a balancing of the equities is not limited to a balancing of financial hardships. The fact that the Sarpals have the means to move the shed without causing them financial hardship does not mean that the equities cannot weigh in their favor. Because the city has not identified why the public interest would be unduly damaged either by granting a variance and allowing the shed to remain or by paying the cost to have the shed relocated and because the Sarpals presented evidence of the expense and difficulty presented by moving the shed, we conclude that the

district court acted within its discretion by balancing the equities in favor of the Sarpals.

## DECISION

When facts surrounding an equitable-estoppel defense are susceptible to more than one interpretation, the defense presents a mixed question of fact and law. When a mixed question of fact and law is determined by the district court following a bench trial, the district court's conclusion is reviewed for an abuse of discretion. Because the district court did not abuse its discretion when it determined that the Sarpals were entitled to a defense of equitable estoppel against the city's request for an injunction, we affirm.

**Affirmed.**