**CITY OF NORTH OAKS, Appellant,**

v.

**Rajbir S. SARPAL, et al., Respondents.**

**No. A09–1961.**

Supreme Court of Minnesota.

May 11, 2011.

---

**6.** Vue was a member of the OMB gang at the time of the shooting.

Leonard J. Schweich, Susan Steffen Tice, Jardine, Logan & O'Brien, P.L.L.P., Lake Elmo, MN, for appellant.

David J. Szerlag, PritzkerOlsen, P.A., Minneapolis, MN, for respondents.

Susan L. Naughton, St. Paul, MN, for amicus curiae League of Minnesota Cities.

Gerald S. Duffy, Mark Thieroff, Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, MN, for amicus curiae RSI Recycling, Inc.

## OPINION

ANDERSON, PAUL H., Justice.

Appellant City of North Oaks commenced an action in Ramsey County District Court against respondents Dr. Rajbir S. Sarpal and his wife, Dr. Carol L. Sarpal, alleging that the Sarpals' newly-constructed shed violates a zoning ordinance establishing a side yard setback, and also encroaches upon a trail easement. The Sarpals raised the affirmative defense of equitable estoppel, alleging that their reliance on a misrepresentation by a City employee, and the City's approval of the permit they prepared in reliance on that misrepresentation bars the City from enforcing the zoning ordinance. After a bench trial, the district court found that the City was equitably estopped from enforcing its zoning ordinance, and dismissed the City's action. The court of appeals affirmed. We reverse and remand.

Respondents Dr. Rajbir S. Sarpal[1] and his wife, Dr. Carol L. Sarpal, live in North Oaks, Minnesota. They purchased a parcel of real property in 2003 from the North Oaks Company, LLC, and in 2003 or 2004, they constructed a home on that property. The Sarpals' use of their property is subject to two restrictions relevant to this action. First, the North Oaks Company reserved an easement over the northernmost 15 feet and the westernmost 15 feet of the property for use as a future trail. Under the terms contained in the deed to the property, the Sarpals are prohibited from placing or building anything on the easement that could interfere with its use as a trail. Second, the City of North Oaks Code of Ordinances § 151.050 provides that no building or structure can be built within 30 feet of property lot lines. North Oaks, Minn., Code § 151.050 (2007).

In the spring of 2006, the Sarpals commenced preparations to construct a shed on their property. In order to obtain the necessary paperwork, Dr. Sarpal visited the office of the City of North Oaks (the City) and told a City employee that he wanted to build a shed and needed a building permit. The City employee told Dr. Sarpal that he needed to submit plans for any proposed shed to the Architectural Supervisory Committee (ASC) of the North Oaks Home Owners Association (NOHOA) before he could apply for a permit from the City. Dr. Sarpal then went to the NOHOA office, and spoke with an employee there. This employee told Dr. Sarpal that he would need to submit a plan with the structure, dimensions, and foundation type of the proposed shed. Dr. Sarpal obtained this information and submitted it to the ASC.

On July 11, 2006, Dr. Sarpal received a letter from an ASC consultant informing

---

1. Dr. Carol L. Sarpal did not testify at trial, and the record is silent on her involvement in the events leading to this appeal. Therefore, our opinion uses the name "Dr. Sarpal" to refer to Dr. Rabjir Sarpal, and "Sarpals" to refer to the couple collectively.

him that the ASC required more information to complete its review of the Sarpals' application for approval of the proposed shed. The consultant specifically asked for an "as-built survey" showing the "location of [the] proposed shed." Dr. Sarpal contacted the consultant to inquire further, and the consultant told Dr. Sarpal that he might be able to obtain an as-built survey from the builders of his house or the City of North Oaks. Dr. Sarpal contacted the builders, but they did not have an as-built survey on file for the Sarpals' property. Dr. Sarpal testified that he then inquired into the cost of obtaining a new survey and learned that a new survey would cost approximately $2,500.

Dr. Sarpal returned to the City office, and asked a City employee if the City had an as-built survey on file for his property. Dr. Sarpal showed the employee the letter that he had received from the ASC consultant, and asked for the type of survey referred to in the letter. The employee then gave Dr. Sarpal a document. Dr. Sarpal testified that he asked the employee "Is this the survey I need?" and the employee responded "yes."

The survey that Dr. Sarpal received from the City employee was prepared by AAA Pollution Control, Inc., and was dated October 2003, a date before the Sarpals' home was built. The survey depicts the Sarpals' property, including a "proposed house," and the 30–foot setback. After obtaining a copy of the survey from the City, Dr. Sarpal drew the location of the proposed shed on the survey and also drew measurement lines from the proposed shed to the "proposed house" on the survey. As drawn by Dr. Sarpal, the shed did not encroach upon the 30–foot setback or the trail easement.

After drawing the proposed shed on the survey, Dr. Sarpal again submitted plans to the ASC, which authorized the Sarpals to construct a shed as it was depicted on the survey. After the Sarpals received this authorization, Dr. Sarpal signed and submitted an application for a building permit to the City. The building permit form provided as follows:

I hereby certify that I have read and examined this application and know the same to be true and correct. All provisions of laws and ordinances governing this type of work will be complied with whether specified herein or not. The granting of a permit does not presume to give authority to violate or cancel the provisions of any other state or local law regulating construction or the performance of construction.

Because Dr. Sarpal was acting as his own general contractor, he was required to sign, and did sign, a "Property Owner Waiver" form. The form stated:

I also acknowledge that as the contractor on this project, I am solely and personally responsible for any violation of the State Building Code and/or jurisdictional Ordinance in connection with the work performed on this property.

(emphasis removed.) The City granted the Sarpals a building permit to construct the shed.

After the Sarpals received the building permit, Dr. Sarpal started building the shed. He staked out the location for the shed to ensure that the eventual location would conform with the plans he had submitted to the City. However, when he located the shed, he did not measure the location from the lot lines of his property; instead, he measured from the house as it was actually built on the property. After Dr. Sarpal laid the concrete foundation for the shed, the City inspected and approved the foundation. Dr. Sarpal then put up the frame for the shed, at which point the City conducted another inspection and approved the structure. Finally, after Dr.

Sarpal finished construction of the shed, he received a certificate of completion from the City.

On September 14, 2007, approximately one year after completing construction of the shed, the Sarpals received a letter from the City. The letter stated that the City was planning to construct a trail in the neighborhood and that the Sarpals' shed encroaches upon the trail easement. The letter stated:

> As you are aware, a pool house[2] has been constructed on your property that extends into the required thirty foot side yard setback. The structure also extends into the fifteen foot NOHOA trail easement.
>
> Due to the necessity of constructing a trail in this easement, the pool house is going to have to be relocated out of the thirty foot setback. The City requests that this structure be relocated within thirty days from the date of this letter.

After receiving the letter from the City, Dr. Sarpal commissioned his own survey to determine whether the shed actually encroaches upon the trail easement and setback. The survey confirmed that the shed does encroach upon both the trail easement and the setback. Dr. Sarpal then realized that the survey that he obtained from the City and used to locate the shed was not an "as-built" survey. He also realized that the "proposed house" shown on the survey was not in the location where the Sarpals' house was eventually built. Accordingly, because Dr. Sarpal had measured from the location of the "proposed house" when he located the

shed on the survey, the shed as built encroaches more than 15 feet into the 30 foot setback and approximately 8 feet into the trail easement.[3]

After learning that the shed encroaches upon the setback and the trail easement, the Sarpals applied for a variance, which the City denied. The Sarpals then requested an extension of time to move the shed because concrete foundations poured during winter tended to be of lower quality, and risked "cracking and crumbling." The City Council approved the request, subject to the condition that the Sarpals acknowledge and adhere to certain deadlines for moving the shed. The Sarpals received a letter from the City outlining these requirements. The record does not reflect whether the Sarpals ever responded to this letter, but it does reflect that they never moved the shed.

In 2008, the City commenced an action against the Sarpals in Ramsey County District Court, alleging a violation of the City code, trespass, and nuisance, and requesting an order requiring the Sarpals to remove the shed from the easement area. In their answer, the Sarpals pleaded several affirmative defenses, including equitable estoppel. Both parties moved for summary judgment and the district court denied both motions. After a bench trial, the court concluded that the City is equitably estopped from enforcing its zoning ordinance against the Sarpals, because the City provided the survey on which Dr. Sarpal had relied in applying for his permit, which the City had granted the Sar-

---

2. The City consistently referred to the shed as a "pool house" in its communications with the Sarpals.

3. A memorandum from a building official for the City explained that Sarpal "used what was [evidently] his original " 'proposed' " site

plan instead of the as-built. He then [proceeded] to place the shed based on measurements from the existing building. The change from the originally [proposed] plan and the as-built was approximately 15'+. Thus the shed ended up 15'+ into the setback."

pals.[4] The court then dismissed all of the City's claims. The City appealed the court's denial of summary judgment and the application of equitable estoppel to the Minnesota Court of Appeals.

The court of appeals affirmed the decision of the district court. *City of North Oaks v. Sarpal*, 784 N.W.2d 857, 866 (Minn.App.2010). The court of appeals, noting "conflicting authority" on the question of the proper standard of review of an equitable estoppel issue after a bench trial, concluded that the proper standard of review was abuse of discretion. *Id.* at 862. The court of appeals then proceeded to examine whether the district court abused its discretion when it concluded that the Sarpals had met their burden of showing equitable estoppel. *Id.* at 863. The court of appeals concluded that the elements of equitable estoppel had been met and affirmed the district court. *Id.* at 864–66. The City petitioned for review, and we granted the petition.

## I.

The first issue before us is whether the court of appeals articulated the proper standard of review. The court of appeals, relying on our opinion in *L & H Transport, Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223 (Minn.1987), adopted a test for determining whether estoppel is a question of fact or a question of law. *Sarpal*, 784 N.W.2d at 862. In *L & H*, we stated that "[w]hile estoppel is ordinarily a question of fact for the jury, when only one inference can be drawn from the facts, the question is one of law." 403 N.W.2d at 227 (citation omitted). In this case, the court of appeals concluded that the facts of the case permit more than one conclusion and that de novo review was inappropriate. *Sarpal*, 784 N.W.2d at 862. The court of appeals then concluded that it would "adopt the standard of review generally used for bench trials involving mixed questions of law and fact—abuse of discretion." *Id.*

We begin our analysis on the standard of review issue by noting that our opinion in *L & H* does not provide the appropriate framework for determining the standard of review to apply to equitable estoppel. Our decision in *L & H* was not made in the context of determining the appropriate standard of review for a district court's conclusions on equitable estoppel when made after a bench trial. 403 N.W.2d at 227. Rather, the decision in *L & H* was made in the context of a grant of summary judgment. *Id.* The difference between these two procedural contexts is significant. In the summary judgment context, the extent to which the facts are disputed is an important substantive element, because when the facts are disputed, summary judgment is inappropriate. *See STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002) ("We review de novo whether a genuine issue of material fact exists."). In *L & H*, we were not concerned with establishing the correct standard of review but with determining whether summary judgment was appropriate. Therefore, we conclude that the court of appeals erred to the extent that it relied on *L & H* to determine the appropriate standard of review to apply to a district court's conclusion on equitable estoppel following a bench trial.

We have said that we review equitable determinations for abuse of discretion. *See, e.g., Lilyerd v. Carlson*, 499 N.W.2d 803, 811 (Minn.1993) (bench trial); *Nadeau v. Cnty. of Ramsey*, 277 N.W.2d 520, 524 (Minn.1979) (motion for reinstatement following grant of motion for new

---

4. The district court did not address whether the City was estopped, or otherwise prevented, from challenging the Sarpals' encroach-ment upon the trail easement. Because we conclude that equitable estoppel is not warranted, we do not reach this issue.

trial).[5]  *But see Halla Nursery, Inc. v. City of Chanhassen,* 781 N.W.2d 880, 885 (Minn.2010) (applying a different standard of review to a district court's equitable determination when this court determined whether to apply equity principle to a new situation).[6]  Under an abuse-of-discretion standard, we may overrule the district court when the court's ruling is based on an erroneous view of the law.  *Citizens State Bank v. Raven Trading Partners, Inc.,* 786 N.W.2d 274, 278 (Minn.2010) (citing *Montgomery Ward & Co., Inc. v. Cnty. of Hennepin,* 450 N.W.2d 299, 306 (Minn. 1990)).  Moreover, a district court abuses its discretion when its decision is against the facts in the record.  *Riley v. State,* 792 N.W.2d 831, 833 (Minn.2011) (citing *Moylan v. Moylan,* 384 N.W.2d 859, 864 (Minn. 1986)).  In a bench trial, we review the findings of fact of the court under the clearly erroneous standard.  Minn. R. Civ. P. 52.01.  If the district court's ruling is free of legal or factual errors, we will not overturn the decision unless the court's discretion is exercised in an "arbitrary or capricious manner."  *Almor Corp. v. Cnty. of Hennepin,* 566 N.W.2d 696, 701 (Minn. 1997) (citation omitted) (internal quotation marks omitted).  *See also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039 (Fed.Cir.1992) (holding that, in the absence of legal or factual error, an equitable determination "can be overturned only if the trial court's decision represents an unreasonable judgment in weighing relevant factors").  We conclude that a district court's conclusion on equitable estoppel after a bench trial is reviewed for abuse of discretion.

## II.

The City argues that the district court abused its discretion when it determined

---

**5.**  Our caselaw is in accord with the majority of state and federal courts that have considered the standard of review for equitable estoppel.  *See, e.g., eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006); *Mabus v. Gen. Dynamics C4 Sys., Inc.,* 633 F.3d 1356, 1359 (Fed.Cir. 2011); *Ahmed v. Holder,* 624 F.3d 150, 155 (2d Cir.2010); *O'Donnell v. Vencor Inc.,* 466 F.3d 1104, 1109 (9th Cir.2006); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1039 (Fed.Cir.1992); *Dep't of Health & Human Servs. v. Pelletier,* 964 A.2d 630, 635 (Me.2009) ("We review a judgment on a defense of equitable estoppel for clear error as to factual findings and for abuse of discretion as to the application of principles of equity to those facts."); *City of Tucson v. Clear Channel Outdoor, Inc.,* 218 Ariz. 172, 181 P.3d 219, 237 (Ariz.Ct.App.2008) ("We review the trial court's decision to apply equitable estoppel for an abuse of discretion."); *Johnnycake Mountain Assocs. v. Ochs,* 104 Conn.App. 194, 932 A.2d 472, 480–81 (2007) ("The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (citation omitted) (internal quotation marks omitted)); *Cnty. of Kendall v. Rosenwinkel,* 353 Ill.App.3d 529, 288 Ill.Dec. 737, 818 N.E.2d 425, 437 (2004) (holding "the determination of whether to apply equitable estoppel is reviewed for abuse of discretion"); *J.M. v. S.M.,* No. 99–P–0719, 2001 WL 721831, at *3 (Mass.App.Ct. June 27, 2001) ("The judge did not abuse his discretion in finding equitable estoppels...."); *Nugent v. Slaght,* 249 Wis.2d 220, 638 N.W.2d 594, 602 (Wis.Ct.App.2001) ("Once the elements of equitable estoppel have been established as a matter of law, the decision to actually apply the doctrine to provide relief is a matter of discretion.").

**6.**  In *Halla,* 781 N.W.2d at 885, we stated that we would review de novo the question of whether vested rights—an equitable doctrine—applied to the facts of a case.  This statement in *Halla* appears to be inconsistent with our cases applying the abuse of discretion standard to equitable determinations.  *See, e.g., Nadeau,* 277 N.W.2d at 524.  But the issue under review in *Halla* was primarily a legal question—whether to extend the doctrine of vested rights to a new situation.  781 N.W.2d at 885.  Therefore *Halla* does not stand for the proposition that a district court's equitable determinations should be reviewed de novo.

that the City is equitably estopped from enforcing its zoning ordinance and the trail easement. We have said that "[w]e do not envision that estoppel will be freely applied against the government," *Mesaba Aviation Div. of Halvorson of Duluth, Inc. v. Cnty. of Itasca,* 258 N.W.2d 877, 879–80 (Minn.1977), and that "estoppel would only be applied against the government . . . 'if the equities advanced by the individual are sufficiently great.'" *Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980) (quoting *Mesaba,* 258 N.W.2d at 880). Accordingly, one seeking to assert estoppel against a governmental entity has a "heavy burden of proof." *Id.*

■ We have previously held that a party seeking to establish equitable estoppel against a government entity must establish four elements. First, there must be "wrongful conduct" on the part of an authorized government agent. *Id.; see Mesaba,* 258 N.W.2d at 879–80. Second, the party seeking equitable relief must reasonably rely on the wrongful conduct. *Brown v. Minn. Dep't of Pub. Welfare,* 368 N.W.2d 906, 910 (Minn.1985). Third, the party must incur a unique expenditure in reliance on the wrongful conduct. *Ridgewood,* 294 N.W.2d at 292. Finally, the balance of the equities must weigh in favor of estoppel. *Id.* at 291. It is undisputed that the Sarpals incurred a unique expenditure in the construction of the shed, and accordingly, the third element is uncontested.

The City argues that the district court erred when it concluded that the Sarpals had established the wrongful conduct element of equitable estoppel. We have said that wrongful conduct is the most important element of equitable estoppel. *Id.* at 293. The court of appeals acknowledged

that the wrongful conduct element required some degree of malfeasance, but concluded that the City acted wrongfully when it (1) approved the Sarpals' application for a building permit that contained incorrect information, and (2) advised Dr. Sarpal that the survey he received from the City employee was an as-built survey. *Sarpal,* 784 N.W.2d at 864. The City argues that these actions do not constitute the "wrongful conduct" necessary to establish the first element of equitable estoppel.

■ We have never attempted to provide a comprehensive definition of "wrongful" in the context of what a party must show to establish equitable estoppel against a government entity. But our cases do establish that an erroneous government action is not necessarily "wrongful." In *Mesaba,* we held that erroneous tax advice made in good faith was not sufficiently culpable to justify a finding of equitable estoppel against the government. 258 N.W.2d at 880. In *Kmart Corp. v. County of Stearns,* 710 N.W.2d 761, 771 (Minn.2006), we concluded that wrongful conduct "has since been interpreted to require some degree of malfeasance." We held in *Kmart* that the tax court's good faith but erroneous interpretation of a tax statute did not rise to the level of wrongful conduct. *Id.* at 772. We have also held that wrongful conduct is not established by "simple inadvertence, mistake, or imperfect conduct." *Bond v. Comm'r of Revenue,* 691 N.W.2d 831, 838 (Minn.2005). Therefore, in order to decide this case, we need not establish an exact definition of "wrongful," because we conclude whatever specific parameters we place on the meaning of "wrongful conduct," our decisions in *Mesaba, Kmart,* and *Bond* establish that a simple mistake[7] by a government official

7. We do not decide today that negligence would be sufficient to satisfy wrongful con-

duct, merely that conduct which does not rise

is not wrongful.[8]

■ With this understanding of wrongful conduct in mind, we proceed to determine whether the conduct of the City in this case constitutes anything more than a simple mistake. The district court found that the City acted wrongfully when it provided the Sarpals with inaccurate documentation, failed to competently review the building permit application, failed to place the Sarpals on notice of the error, and ultimately approved the application to construct the shed. Importantly, the court did not find, and the record does not suggest, that any of these actions by the City constitutes anything other than a simple mistake.

The district court found that "[u]pon the Sarpals' request for an as-built survey, a city employee of North Oaks provided the Sarpals what they were led to believe was an as-built survey of the property." The court also found that the survey was not, in fact, an as-built survey. But the court did not find that the actions of the City employee were anything other than a mistake on the part of the employee who gave the Sarpals the purported as-built survey. The court made no finding that the employee intended to deceive the Sarpals or induce them to build their shed in violation of the zoning ordinance. Moreover, the court did not find, and the record does not support a finding, that there was any relationship between the Sarpals and the City employee which would impose a duty upon the City employee to provide an "as-built" survey. Based on the absence of any findings that would support a conclusion that the City acted culpably, we conclude that

the City's actions did not constitute anything other than a simple mistake. Therefore, we conclude that the actions of the City employee did not constitute wrongful conduct sufficient to support the first element necessary to establish equitable estoppel against the City.

Our conclusion that the actions of the City employee in providing the survey to the Sarpals were not wrongful does not end our analysis. The district court also found that the City acted wrongfully when its building inspector reviewed the plans submitted by the Sarpals, including the purported as-built survey, and granted a permit on the basis of those plans. But the record establishes that the City is entitled to rely on the accuracy of the documents submitted by a landowner or contractor. Specifically, when Dr. Sarpal submitted his permit application, he certified that the information in his application materials was correct. Moreover, the inspector testified that the scope of the City's review was limited to making sure that the shed's location as depicted in the Sarpals' materials did not violate the setback requirement. The documents submitted by the Sarpals indicated that the shed did not encroach upon the setback.

Dr. Sarpal asserts that the City should have known that the information in his documents was inaccurate. But the City did not know that Dr. Sarpal would locate his shed by referring to the location of the "proposed house." Moreover, the City did not know that the Sarpals' house was not built in the location shown on the survey that Dr. Sarpal submitted. Had Dr. Sar-

---

even to the level of negligence is not enough to constitute wrongful conduct.

8. Generally, a government action will not be the basis of an equitable estoppel finding unless the action was undertaken by an agent who was authorized to do so. *Mesaba,* 258

N.W.2d at 879. The parties did not argue this issue at trial or before this court, and because we reverse on other grounds, we conclude that it is unnecessary to reach the issue of whether the City employee was authorized to make representations on the City's behalf.

pal located his shed by referring to the lot lines, as the City assumed, his documents would have been accurate in all relevant respects. Therefore, we conclude there was no reason why the City should have noticed or corrected the Sarpals' error, or declined to issue a permit on the basis of the Sarpals' error.

Based on the foregoing analysis, we conclude that the facts in the record do not support the district court's finding that the City acted wrongfully. Because we conclude that the first element of equitable estoppel has not been satisfied, we need not consider the other elements. The facts as found by the district court do not support a conclusion that the City should be estopped from enforcing its zoning ordinance against the Sarpals. Therefore, we conclude that the district court abused its discretion when it dismissed all of the City's claims against the Sarpals. Accordingly, we reverse the court of appeals' decision and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.