**Bruce NELSON, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

**No. A11–2015.**

Supreme Court of Minnesota.

Nov. 14, 2012.

Terrance A. Costello, Saint Paul, MN, for relator.

Lori Swanson, Attorney General, Jeremy D. Eiden, Assistant Attorney General, Saint Paul, MN, for respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Relator Bruce Nelson challenges several personal liability assessments that the Commissioner of Revenue ("the Commis- sioner") made against him based on unpaid petroleum and sales taxes owed by Twin Cities Avanti Stores, LLC ("Avanti"). The period at issue is September 2008 through April 2009. The amount at issue exceeds $4 million.[1] In his appeal to our court, Nelson does not dispute that he could be held personally liable under Minn.Stat. § 270C.56 (2010), but he asserts that the tax court erred in granting summary judg- ment to the Commissioner because the court did not allow him additional discov- ery to explore an estoppel defense. Be- cause the tax court did not abuse its dis- cretion in denying the discovery request, we affirm.

## I.

*Relevant Entities and Persons*

Avanti and Twin Cities Stores, Inc. ("T.C.Stores") were wholly-owned subsid- iaries of RM Group, Inc., a Delaware cor- poration of which Nelson was the majority shareholder. Both Avanti and T.C. Stores owned or operated various retail conven- ience stores, primarily in Minnesota. Avanti did business as Oasis Markets, us- ing the names Oasis Markets, Food and Fuel, Happy Dan's, and Budget Mart. Nel- son held the controlling interest (approxi- mately 85%) in RM Group. Nelson is also the chairman and sole director of RM Group.

Other persons involved in Avanti and T.C. Stores were Scott Stevens and Robert Lovejoy. Stevens was Avanti's president. Lovejoy was Avanti's chief administrative officer until February 2006. From De- cember 2007 through July 2009, Avanti retained Lovejoy to "consult and advise on

---

1. In addition to the assessment against Nel- son, the Commissioner also assessed Scott Stevens with personal liability for the same outstanding petroleum tax and sales tax liabil- ity over the same period of time. The tax court granted summary judgment to the Com- missioner on Stevens' appeal, and Stevens has appealed separately to our court. *See Stevens v. Comm'r of Revenue*, 822 N.W.2d 646 (Minn.2012).

financial matters that may affect the company." Stevens testified that Avanti was "Bruce Nelson's company, and that he [Nelson] is the maestro here." Stevens also testified that Nelson's control over Avanti's financial matters increased as cash resources diminished.

*Unpaid Tax Liability*

In 2008 and 2009, Avanti failed to pay petroleum taxes and sales taxes generated from the sale of petroleum products by Avanti and T.C. Stores. Avanti held a distributor's license from the Department of Revenue ("the Department") and purchased all of the petroleum products ultimately sold by both Avanti and T.C. Stores. T.C. Stores sold approximately 73 percent of the petroleum purchased by Avanti for both companies, while Avanti sold the remaining 27 percent. Under Minnesota law, therefore, T.C. Stores may have been liable for unpaid taxes on the petroleum products sold by its facilities. *See* Minn.Stat. § 296A.10 (2010) ("It is the duty of every ... person who sells or uses gasoline ... to know whether the tax has been paid on the fuel. If the tax ... has not been paid, it is that person's duty ... to pay the tax....").

Because Avanti had made all petroleum purchases and had filed all petroleum tax returns for the combined companies, the Department filed liens against Avanti alone for the petroleum tax liability. In March 2009 Avanti contacted the Department to discuss its petroleum tax arrearages, and submitted a proposed payment plan to the Department. By letter dated April 2, 2009, the Department rejected that plan, but offered Avanti the opportunity to request reconsideration of the denial. In April 2009, on behalf of Avanti and T.C. Stores, attorney Brian McCool sent a letter to Department employee Joe Saenger seeking formal reconsideration of the Avanti payment plan. McCool explained

that Avanti and T.C. Stores actually functioned as a single economic unit and, accordingly, that the Department's assessment of Avanti alone did not reflect the economic reality of the companies' joint operation. McCool wrote, "Simply stated, this joint economic entity, not [Avanti] alone, is responsible for the taxes owed currently to the State." McCool emphasized that any viable plan to pay the tax arrearages must include the cash flow and assets of T.C. Stores.

In early May 2009 the Department rejected the revised payment plan proposed by McCool. The Department also filed tax liens against T.C. Stores in Ramsey and Dakota counties, and with the Minnesota Secretary of State.

On June 30, 2009, Avanti and T.C. Stores each filed petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Minnesota. The companies sought joint administration of the bankruptcy case. The companies emphasized that they had filed for bankruptcy, in large part, because the Department had asserted liens against the assets of both companies:

> During late 2008 and early 2009, because of cash flow problems, Debtors became delinquent on their payment of petroleum taxes to the [Department]. As of the Filing Date, the State of Minnesota calculated the amount in arrears to be $3,985,620.67. Pursuant to Minnesota statutes, the State of Minnesota asserted liens against Debtors' assets for these unpaid taxes, and shortly before the Filing Date began collection efforts, including directing certain of Debtors' dealers to make their rent payments to the State of Minnesota.

Concluding that the companies' bankruptcy filings were factually and legally connected, the bankruptcy court granted the

request for joint administration of the Avanti and T.C. Stores bankruptcies.

On January 21, 2010, the companies filed a joint second amended plan of reorganization under Chapter 11 ("joint plan"). Under the joint plan, T.C. Stores would sell one of its convenience stores in St. Paul, and escrow $750,000 of the sale proceeds for immediate partial payment of the companies' tax arrearages. The companies would pay down the remaining tax liability and interest over the ensuing 48 months.

Creditors objected to the joint plan, inter alia, on the grounds that: (1) both companies were not liable for the Minnesota petroleum tax arrearages; and (2) the plan was not viable. In responding to the first point, the companies noted: "While [Avanti] was originally assessed for the claim, the State of Minnesota subsequently filed liens against the assets of [T.C. Stores] for the full amount of the tax debt. The State has never released or withdrawn these liens." In responding to the second point, the companies emphasized that the repayment plan was viable specifically because T.C. Stores' assets and cash flow were available during the reorganization, not just Avanti's.

Prior to the confirmation hearing on the joint plan, the Department withdrew its tax liens against T.C. Stores. This withdrawal eliminated the Department's secured position with respect to other creditors in T.C. Stores' properties and assets. Specifically, when the Department withdrew its tax liens against T.C. Stores, it surrendered the State's secured position in the $750,000 of proceeds that otherwise would have been paid to the State. The debtors subsequently withdrew the joint plan, claiming that the State's removal of the liens forced the withdrawal.

After the Department withdrew the tax liens, Ralph Mitchell, an attorney who took over the representation of Avanti in the bankruptcy proceeding, contacted Ralph Swanson, the Department's director of special tax division, which administers petroleum taxes. Mitchell explained to Swanson that the release of the tax liens lodged against T.C. Stores foreclosed Avanti's and T.C. Stores' ability to pay the $3.9 million in unpaid petroleum taxes. Swanson stated that he did not know which Department officials had made the decision to remove the T.C. Stores liens, or why the liens had been removed. Swanson told Mitchell, however, that the Department had received numerous calls concerning the case, and that someone had called and asked the Department to release the liens against T.C. Stores.

Stevens and Nelson (the "taxpayers") separately served the Commissioner with discovery requests regarding, among other things: (1) the identities of all Department officials involved in the decision to file tax liens against T.C. Stores, and the reasons for filing such liens; (2) the identities of all Department officials involved in the decision to withdraw or release the liens; and (3) the identities of all third parties who had contacted the Department regarding withdrawal of the liens.

The Commissioner asserted that these discovery requests were vague, ambiguous and overly broad, but nevertheless stated: (1) that Department employee Ron Schwagel was "generally involved" in the decision to file tax liens against T.C. Stores, and that they were filed at the request of Avanti; and (2) that Schwagel was likewise knowledgeable about the decision to withdraw the liens, and that they were withdrawn because the Department had never filed an order assessing T.C. Stores with the underlying tax liability. The Commissioner did not respond to the taxpayers' request for information regarding third-party contacts with the Department about the release of the T.C. Store liens. At-

tached to the Commissioner's discovery responses was a Department activity log related to T.C. Stores. This log indicates that on January 22, 2010, the Department withdrew the T.C. Stores liens:

> ID used in the lien belongs to Twin City [sic] Stores, but the debt belongs to Twin Cities Avante [sic] with its pwn [sic] ID, although they are sister stores, cannot apply a lien to an entity that the debt does not belong to, the two stores Twin Cities Stores & Twin City of Avante [sic] are recognized separate with their own ID's.

The taxpayers were not satisfied with these discovery responses, and contacted the Commissioner to schedule a "conference" under Minn. R. Gen. Prac. 115.10. During that conference, the parties discussed the Commissioner's responses to the discovery requests. The Commissioner's counsel asserted that the Department's logs adequately responded to the discovery requests, and that she was not aware of any third-party communications with the Department regarding the release or withdrawal of the liens. Later that day, however, the Commissioner's counsel, acknowledging oversight in responding, e-mailed the taxpayers additional activity logs that had not previously been produced. The Commissioner's counsel continued to assert that the requested material was irrelevant.

Still not satisfied, the taxpayers filed a joint motion to compel discovery. Briefly, taxpayers argued: (1) that they had complied with Minnesota law by informing the Department that T.C. Stores was also responsible for Avanti's tax arrearage; (2) that in recognition of this fact, the Department had filed tax liens against T.C. Stores; (3) that the Department's liens prompted them to file—and were essential to the success of—the joint plan of reorganization; and (4) that the Department's sudden withdrawal of the liens destroyed the viability of the joint plan and forced the companies into Chapter 7 bankruptcy liquidations. The taxpayers argued that they were entitled to further pursue information regarding which Department officials had filed and withdrawn the liens, their reasons for doing so, and which third parties had contacted the Department about the liens:

> [Taxpayers] believe that [the Commissioner's] unilateral release of the liens and the resulting destruction of the Chapter 11 plan for paying the petroleum taxes at issue resulted in a detrimental reliance on the part of [T.C. Stores, Avanti] and Mr. Nelson and Mr. Stevens justifying the application of equitable estoppel. The discovery sought in this motion may lead to evidence relevant to that claim.

The Department moved for summary judgment, and on December 3, 2010, the tax court held a hearing to consider (1) the Commissioner's motion for summary judgment on the personal liability assessments against the taxpayers, and (2) the taxpayers' joint motion to compel discovery. The court held that the taxpayers could present their estoppel argument by supplemental post-hearing memorandum, but denied the taxpayers further discovery to develop the estoppel claim. The court specifically denied the taxpayers the opportunity to depose the Department officials who filed and subsequently withdrew the T.C. Stores liens, and who had indicated that third parties had contacted the Department about releasing the liens.

On August 30, 2011, the tax court granted the Commissioner's motion for summary judgment, ruling that Nelson could be held personally liable for the unpaid petroleum taxes of Avanti. The court also rejected the taxpayers' estoppel claim on the ground that "estoppel is not an avail-

able remedy because the Commissioner did not misrepresent [taxpayers'] personal liability nor did the [taxpayers'] reasonably rely on any such alleged misrepresentation." Stevens and Nelson appealed separately to our court.

## II.

■■■ "A trial court has considerable discretion in ruling on discovery related motions, such as those at issue here. We review such rulings under an abuse of discretion standard, and a matter will not be disturbed on appeal unless the trial court abused its discretion, exercised its discretion in an arbitrary or capricious manner, or based its ruling on an erroneous view of the law." *EOP–Nicollet Mall, L.L.C. v. County of Hennepin,* 723 N.W.2d 270, 274–75 (Minn.2006).

Nelson does not dispute that he is a person who had the requisite control and supervision to be held personally liable for his companies' tax debt under Minn.Stat. § 270C.56 (2010). But he does argue that the tax court's grant of summary judgment in favor of the Commissioner was inappropriate because he should have had the "opportunity to depose the Department officials who filed, but later withdrew, the [T.C. Stores] liens." In rejecting the taxpayers' estoppel claim, the tax court held that "estoppel is not an available remedy because the Commissioner did not misrepresent [taxpayers'] personal liability nor did the [taxpayers'] reasonably rely on any such alleged misrepresentation." Because the evidence did not support an equitable estoppel claim, regardless of the discovery request, we affirm the tax court's decision.

■■■ We turn to those elements. A party asserting estoppel against a government entity must establish four elements: First, there must be "wrongful conduct" on the part of an authorized government agent. Second, the party seeking equi-

table relief must reasonably rely on the wrongful conduct. Third, the party must incur a unique expenditure in reliance on the wrongful conduct. Finally, the balance of the equities must weigh in favor of estoppel.

*City of North Oaks v. Sarpal,* 797 N.W.2d 18, 25 (Minn.2011) (citations omitted). A party asserting estoppel against a governmental entity has a "heavy burden of proof." *Ridgewood Dev. Co. v. State,* 294 N.W.2d 288, 292 (Minn.1980). Wrongful conduct is not established by "simple inadvertence, mistake, or imperfect conduct." *North Oaks,* 797 N.W.2d at 25 (citation omitted) (internal quotation marks omitted).

■■■ First, there is no evidence that the Department engaged in wrongful conduct. Nelson was a beneficiary of a discretionary decision by the Department—a decision he urged the Department to make—and now claims that he was damaged when the Department reversed course. But equitable estoppel requires more than an unfavorable decision by the government. Estoppel is "an equitable doctrine addressed to the discretion of the court and intended to prevent a party from taking unconscionable advantage of his own wrong by asserting his strict legal rights." *Brown v. Minnesota Dep't of Pub. Welfare,* 368 N.W.2d 906, 910 (Minn. 1985) (quoting *N. Petrochemical Co. v. United States Fire Ins. Co.,* 277 N.W.2d 408, 410 (Minn.1979)).

Nelson has submitted no evidence to suggest that the Department misrepresented anything regarding its lien filings to induce the taxpayers to believe that they were not personally liable for Avanti's tax liabilities. In fact, it was at the prompting of Brian McCool, counsel for Avanti and T.C. Stores, that the Department filed liens against T.C. Stores. Additionally,

Nelson has provided no authority that the Department is obligated to assess tax liability against any specific entity or individual, including T.C. Stores. The decision to withdraw the tax liens against T.C. Stores because T.C. Stores has no underlying tax liability was within the Department's discretionary authority, and we therefore cannot conclude that the Department's actions were wrongful. *See* Minn.Stat. § 270C.63, subd. 15 (2010) ("If the commissioner determines that the filing of the notice of any lien was erroneous ... the commissioner must issue a certificate of release of the lien.... Even if a lien is not erroneous, the commissioner may withdraw the lien if the filing of the lien was premature or not in accordance with administrative procedures of the commissioner, or withdrawal of the lien will facilitate the collection of the tax liability.").

 Second, Nelson failed to establish that he incurred a "unique expenditure" in reliance on the Department's conduct. *See North Oaks*, 797 N.W.2d at 25. Although Avanti and T.C. Stores filed bankruptcy petitions in reliance on the tax liens against T.C. Stores, there is no evidence that Nelson changed his position *personally* in reliance on the tax liens. To succeed on a claim of equitable estoppel against the government, a party "must incur a unique expenditure in reliance on the wrongful conduct." *Id.; Ridgewood*, 294 N.W.2d at 292 (holding that "before a court will examine the conduct of the party sought to be estopped, the seeker of the equitable remedy must demonstrate that he suffered some loss through his reasonable reliance on that conduct").

Here, Nelson suffered no loss from the Commissioner's decision to withdraw the liens. Once Avanti failed to pay its petroleum taxes, personal liability under Minn. Stat. § 270C.56 attached, and Nelson and Avanti were jointly and severally liable for Avanti's tax liability. At that point, the Department had discretionary authority to pursue Avanti or Nelson, or both, for payment of the tax liability. *See* Minn.Stat. § 270C.56, subd. 3(a) (2010) ("The commissioner may assess liability for the taxes described in subdivision 1 against a person liable under this section."); Minn.Stat. § 270C.56, subd. 4 (2010) ("A person who has paid all or part of a liability assessed under this section has a cause of action against other liable persons to recover the amount paid in excess of that person's share of the liability"). In other words, the Department was not obligated to pursue Avanti, T.C. Stores, or anyone else for payment before it pursued Nelson. Thus, Nelson suffered no loss when the joint plan failed because his personal liability did not turn on whether the plan succeeded. Because Nelson cannot establish the elements of equitable estoppel, the tax court did not abuse its discretion when it denied his request for additional discovery to pursue such a claim.

Affirmed.

WRIGHT, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

