Filed 1/6/15  Commissioner of Revenue of the State of Minnesota v. Nelson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| COMMISSIONER OF REVENUE OF THE STATE OF MINNESOTA,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRUCE NELSON,<br><br>    Defendant and Appellant. | 2d Civil No. B251215<br>(Super. Ct. No. 1415616)<br>(Santa Barbara County) |

Bruce Nelson challenged several personal liability assessments that the Minnesota Commissioner of Revenue ("the Commissioner") made against him and Scott Stevens.  The assessments were for unpaid petroleum and sales taxes.  The amount of the unpaid taxes exceeds $4 million.  Nelson does not dispute his personal liability for the taxes under Minnesota law but asserts the tax court erred in granting summary judgment to the Commissioner by denying his request for additional discovery to explore an estoppel defense.  Nelson's appeal to the Minnesota Supreme Court was unsuccessful.  In 2013, the resulting judgment was certified and registered in California.  Nelson moved to vacate the California judgment based on the contention that the tax court's discovery

ruling denied him due process of law. The trial court in California denied the motion to vacate and Nelson appealed the ruling. We affirm.

I.

*FACTUAL AND PROCEDURAL HISTORY*

*Relevant Entities and Persons*

Avanti and Twin Cities Stores, Inc. ("T.C. Stores") were wholly-owned subsidiaries of RM Group, Inc., a Delaware corporation. Nelson owned an 85 percent interest in RM Group. Avanti and T.C. Stores owned or operated various retail convenience stores that sold sundries and gasoline. Scott Stevens was Avanti's president.

*Unpaid Tax Liability*

Avanti purchased all of the petroleum products sold by both Avanti and T.C. Stores. In 2008 and 2009, Avanti failed to pay to the Department of Revenue ("the Department") petroleum and sales taxes for petroleum products sold by Avanti and T.C. Stores. Because Avanti made all petroleum purchases and filed all petroleum tax returns for the combined companies, the Department filed tax liens against Avanti alone. Because T.C. Stores sold some of the gasoline, it may also have been liable for failing to pay taxes on the petroleum products sold at its facilities. (See Minn. Stat. § 296A.10 (2010).)

In 2009, Avanti submitted a proposal for the payment of the taxes that the Department rejected. Avanti's request for reconsideration explained that Avanti and T.C. Stores acted as a single economic unit and thus Avanti alone should not be entirely responsible for the unpaid taxes. Avanti also pointed out that any plan to pay the tax arrearages had to include the cash flow and assets of T.C. Stores in order for the payment plan to be viable. Nevertheless, the Department rejected a revised proposal for payment of the taxes. At Nelson's specific request, and because some of the petroleum products were sold by T.C. Stores outlets, the Department also filed tax liens against T.C. Stores.

Avanti and T.C. Stores filed petitions under Chapter 11 of the Bankruptcy Code and sought joint administration of the bankruptcies. The companies' joint plan of reorganization proposed selling one of the T.C. Stores locations, paying $750,000 of the

2

proceeds toward the arrearages – about 16 percent of the amount due and giving the Department an "IOU" from the bankrupt companies for the payment of the balance over 48 months.

Creditors objected to the joint plan, pointing out 1) that only Avanti – not T.C. Stores – was liable for the Minnesota petroleum tax arrearages and thus the assets and cash flow of T.C. Stores should not be used to settle this debt but should instead be used to cover the claims of secured and unsecured creditors; and, 2) that the plan was not viable.  Avanti and T.C. Stores responded that although the Department originally assessed only Avanti, it later filed liens against T.C. Stores as well and that those liens were still pending.  The companies emphasized that their proposed repayment plan would only be viable if T.C. Stores' assets and cash flow were also available to settle the tax and other debts.

Prior to the confirmation hearing on the joint plan, the Department withdrew its tax liens against T.C. Stores.  This eliminated the Department's secured position with respect to other creditors' claims to the assets and cash flow of T.C. Stores and correspondingly increased Nelson's individual exposure for the unpaid taxes.  Avanti and T.C. Stores then withdrew the joint plan, claiming that the State's removal of the liens against T.C. Stores forced the withdrawal.

*Proceedings in the Tax Court*

Nelson filed a Notice of Appeal in the Minnesota Tax Court seeking to avoid the assessment against him personally.  The Department's deputy director of the special tax division told Avanti's bankruptcy counsel that he did not know who made the decision to remove the T.C. Stores liens or why they were removed but that the Department had received numerous calls concerning the case.  Nelson then served the Commissioner with discovery requests seeking the identities of all Department officials and third parties who were involved in the decision to file and then withdraw the tax liens against T.C. Stores.

The Commissioner's response to the discovery requests provided some information but not enough to satisfy Nelson and Stevens.  At a prefiling conference, the

3

Commissioner's counsel asserted that the Department was unaware of any third-party communications regarding the withdrawal of the liens and said the requested material was irrelevant in any event.

Nelson and Stevens filed a joint motion to compel discovery. They argued that filing the tax liens against T.C. Stores was essential to the success of the joint plan of reorganization and that withdrawing the liens forced the companies into Chapter 7 bankruptcy liquidations. Nelson and Stevens claimed they relied on the Department's filing tax liens against T.C. Stores' assets because it permitted them to avoid personal liability for the tax arrearages. They argued the Commissioner should be equitably stopped from seeking payment of the taxes from them individually. They did not argue that withdrawing the tax lien was unlawful or that denying the request for additional discovery was in some way a denial of due process.

The Department moved for summary judgment. The tax court set the motions for hearing at the same time. The tax court ruled Nelson and Stevens could present their estoppel argument at trial but that they were not entitled to further discovery to develop the claim. Later, the tax court granted the Commissioner's motion for summary judgment, ruling that Nelson and Stevens were personally liable for the unpaid petroleum taxes of Avanti. The tax court specifically rejected Nelson's estoppel claim on the ground that "estoppel is not an available remedy because the Commissioner did not misrepresent [taxpayers'] personal liability nor did the [taxpayers] reasonably rely on any such alleged misrepresentation."

*Proceedings in the Minnesota Supreme Court*

Nelson and Stevens separately appealed to the Minnesota Supreme Court seeking to reverse the tax court judgment making them individually liable for the $4 million in petroleum and sales taxes. Nelson reiterated his argument that the tax court should have granted the discovery motion and should have permitted him to take depositions to develop the equitable estoppel theory. He made no due process claim.

In 2012, the Minnesota Supreme Court concluded Nelson could not satisfy the requirements of an equitable estoppel argument whether or not the discovery motion

4

was granted.  The Court stated, "[T]here is no evidence that the Department engaged in wrongful conduct.  Nelson was a beneficiary of a discretionary decision by the Department—a decision he urged the Department to make—and now claims that he was damaged when the Department reversed course.  But equitable estoppel requires more than an unfavorable decision by the government." (*Nelson v. Commissioner of Revenue* (2012) 822 N.W.2d 654, 660.)  The Court added, "Nelson has submitted no evidence to suggest that the Department misrepresented anything regarding its lien filings to induce the taxpayers to believe that they were not personally liable for Avanti's tax liabilities.  In fact, it was at the prompting of . . . Avanti and T.C. Stores, that the Department filed liens against T.C. Stores.  Additionally, Nelson has provided no authority that the Department is obligated to assess tax liability against any specific entity or individual, including T.C. Stores.  The decision to withdraw the tax liens against T.C. Stores because T.C. Stores has no underlying tax liability was within the Department's discretionary authority, and we therefore cannot conclude that the Department's actions were wrongful.  *See* Minn. Stat. § 270C.63, subd. 15 (2010) ('If the commissioner determines that the filing of the notice of any lien was erroneous . . . the commissioner must issue a certificate of release of the lien. . . .  Even if a lien is not erroneous, the commissioner may withdraw the lien if the filing of the lien was premature or not in accordance with administrative procedures of the commissioner, or withdrawal of the lien will facilitate the collection of the tax liability.')  [¶]  Second, Nelson failed to establish that he incurred a 'unique expenditure' in reliance on the Department's conduct.  [Citation.]  Although Avanti and T.C. Stores filed bankruptcy petitions in reliance on the tax liens against T.C. Stores, there is no evidence that Nelson changed his position *personally* in reliance on the tax liens. . . . [¶]  Here, Nelson suffered no loss from the commissioner's decision to withdraw the liens.  Once Avanti failed to pay its petroleum taxes, personal liability under Minn. Stat. § 270C.56 attached, and Nelson and Avanti were jointly and severally liable for Avanti's tax liability.  At that point, the Department had discretionary authority to pursue Avanti or Nelson, or both, for payment of the tax liability.  *See* Minn. Stat. § 270C.56, subd. 3(a) (2010)." (*Id.*, at p. 661.)

5

*Proceedings in the Santa Barbara County Superior Court*

On February 7, 2013, the Commissioner filed an ex parte application for the entry of a sister state judgment. (Code Civ. Proc., §§ 1710.15, 1710.20.)[1] On the same day, the Santa Barbara County Superior Court entered a judgment for $4,051,173.12, based upon the Minnesota judgment. (§ 1710.25.) On March 25, 2013, Nelson moved to vacate the judgment arguing for the first time that he was not afforded due process of law because the Minnesota Tax Court and the Minnesota Supreme Court refused to permit him to conduct discovery he characterized as essential to his defense of estoppel.

The superior court concluded that the Minnesota Supreme Court foreclosed Nelson's argument that he was denied due process. The court reasoned, "by deciding that the Minnesota Tax Court did not abuse its discretion in denying discovery, the Minnesota Supreme Court correspondingly decided that the denial of discovery was not so fundamental as to deprive Nelson of due process." The superior court also pointed out that Nelson did not present any evidence in support of his position that had not already been presented to and considered by the Minnesota courts. Citing *Bank of America v. Jennett* (1999) 77 Cal.App.4th 104, 113-114, the court noted "a judgment is entitled to full faith and credit – even as to questions of jurisdiction – when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." The court concluded the discovery issue was thoroughly litigated in Minnesota and ruled Nelson's due process right was not abridged.

## DISCUSSION

We review an order denying a motion to vacate a sister state judgment for an abuse of discretion. (*State of Arizona ex rel. Arizona Dept. of Revenue v. Yeun* (2009) 179 Cal.App.4th 169, 178.) We will not reverse the exercise of such discretion except when there is clear abuse. We view all factual matters in the light most favorable to the

---

[1] All statutory references are to the Code of Civil Procedure unless stated otherwise.

6

prevailing party. (*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 Cal.App.4th 74, 89.)

Under article IV, section 1, of the United States Constitution, courts shall accord full faith and credit to a judgment of a sister state unless the rendering court lacked jurisdiction. (*Bank of America* v. *Jennett*, *supra*, 77 Cal.App.4th at p. 113; *Washoe Development Co.* v. *Guaranty Federal Bank* (1996) 47 Cal.App.4th 1518, 1521.) "[A] judgment entered by one state must be recognized by another state if the state of rendition had jurisdiction over the parties and the subject matter and all interested parties were given reasonable notice and opportunity to be heard. [Citations.]" (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1010.) The "permissible scope of inquiry" by the sister state is limited to a determination whether the forum court had jurisdiction of the parties and the subject matter. (*Ibid.*) That is plainly the case here.

Section 1710.40, subdivision (a) provides that a judgment entered pursuant to California's Sister State and Foreign Money-Judgments Act (§ 1710.10 et seq.) "may be vacated on any ground which would be a defense to an action in this state on the sister state judgment . . . ." Following section 1710.40, the Law Revision Commission's Comment sets forth "common defenses" to enforcement of the judgment. The list includes lack of jurisdiction, misconduct by the plaintiff and extrinsic fraud. (*Ibid.*) Nelson's motion to vacate the Minnesota judgment does not reach any of the common defenses listed in section 1710.40. He cannot overcome the full faith and credit we must afford the Minnesota judgment.

Principles of res judicata apply to matters actually presented to sustain or defeat the right asserted in the earlier proceeding as well as "'any other available matter which might have been presented to that end.'" (*Chicot Co. Drainage Dist.* v. *Baxter State Bank* (1940) 308 U.S. 371, 378.) "As long as the sister state court had jurisdiction over the subject matter and the parties, a sister state judgment is entitled to full faith and credit 'even as to matters of law or fact erroneously decided.' [Citations.]" (*Bank of America v. Jennett*, *supra*, 77 Cal.App.4th at p. 118.) Contrary to Nelson's arguments, differing policies about the discovery available to litigants cannot contravene the full

faith and credit clause of the Constitution.  (*World Wide Imports, Inc.* v. *Bartel*, *supra*, 145 Cal.App.3d 1006, 1011.)

The trial court acted properly by denying Nelson's motion to vacate the sister state judgment.  Nelson appeared and defended in the Minnesota action.  The Minnesota Tax Court and the Minnesota Supreme Court concluded that the Commissioner and the Department did nothing wrong in rescinding the tax lien against T.C. Stores – an action expressly authorized by statute – and said nothing that would permit him to infer that filing the tax lien against T.C. Stores meant he would no longer be personally liable for misdirecting petroleum and sales taxes, that the State meant to protect him from personal responsibility for the taxes or that the tax lien against T.C. Stores would never be withdrawn.  As the trial court noted, an ample measure of due process has been afforded Nelson.  California must accord full faith and credit to the resulting judgment.

The order denying appellant's motion to vacate the sister state judgment is affirmed.  Costs on appeal are awarded to respondent.

<u>NOT TO BE PUBLISHED.</u>

BURKE, J.[*]

We concur:

GILBERT, P. J.

YEGAN, J.

(Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

8

James E. Herman, Judge

Superior Court County of Santa Barbara
_____

Reetz, Fox & Bartlett LLP, Randall Fox, Anna M. D'Alessandro for Defendant and Appellant.

Kutock Rock LLP, Antoinette P. Hewitt, Christopher D. Glos for Plaintiff and Respondent.