*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2243**

In the Matter of the Licensing Order
Issued to Avalon Homes, Inc., and
Mitchell Ammerman, individually.

**Filed September 15, 2014
Affirmed
Halbrooks, Judge**

Department of Labor and Industry
OAH No. 65-1902-23106

Timothy J. Hassett, Jon L. Farnsworth, Felhaber Larson, St. Paul, Minnesota (for relators Avalon Homes, Inc. and Mitchell Ammerman)

Lori Swanson, Attorney General, Christopher M. Kaisershot, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Labor and Industry)

Considered and decided by Halbrooks, Presiding Judge; Chutich, Judge; and Klaphake, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

In this certiorari appeal from the decision of the Minnesota Department of Labor and Industry (DLI), relators argue that (1) the commissioner erred by determining that the doctrine of equitable estoppel does not prohibit DLI from sanctioning relator; (2) DLI

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

waived its right to sanction relator once it renewed relator's license; (3) the commissioner erred in its interpretation and application of Minn. Stat. § 326B.84(7) (2012); and (4) the commissioner erred by naming Mitchell Ammerman individually in its case caption and by making adverse findings of fact against him. We affirm.

## FACTS

Relator Mitchell Ammerman is the sole owner and chief financial officer (CFO) of relator Avalon Homes, Inc., a residential construction company. Avalon is required to hold a residential-building-contractor license with the State of Minnesota. Avalon obtained this license through respondent DLI on February 27, 1992. Because Ammerman is registered with DLI as Avalon's "qualifying person," he is responsible for fulfilling any examination and educational requirements for Avalon's licensure.

In 2008, Avalon was impacted by the economic recession and faced a financial crisis. It was unable to pay some of its subcontractors for work they had performed, and it was unable to pay for various business equipment. In June 2011, G.E. Capital Information Technology obtained a $52,623.81 judgment against Avalon for machinery it had sold to Avalon. In June 2011, Metro Home, one of Avalon's subcontractors, obtained a $151,740.45 judgment against Avalon. Metro Home contacted DLI to notify it of Avalon's debt and urged DLI to take licensing action against Avalon. Soon after Metro Home obtained its judgment, Avalon sent a letter to DLI to report that these judgments had been issued and that it intended to "cease operations" after it completed construction of its current projects.

2

In early 2012, Avalon applied to renew its license with DLI. Near this same time, Avalon settled a lawsuit filed by Mellas Electric, Inc. for unpaid debts. Mellas worked as an electrical subcontractor for Avalon for more than two decades. As part of the settlement, Avalon agreed to pay Mellas $65,000. On March 27, 2012, Avalon reported to DLI that it had signed a confession of judgment in favor of Mellas and claimed that the judgment was a "step that Avalon ha[d] taken to make satisfactory arrangements with creditors to wind down its operations." On April 1, 2012, DLI renewed Avalon's license.

In August 2012, DLI served Avalon with a licensing order. The order revoked Avalon's license because Avalon had "demonstrated itself to be untrustworthy, financially irresponsible or otherwise incompetent or unqualified to act under a license issued by the commissioner." The order also imposed a $5,000 civil penalty against Avalon, and ordered Ammerman, "individually, or doing business as Avalon Homes, Inc., or any other business name, to cease and desist from acting or holding yourselves out as residential building contractors . . . in the state of Minnesota." The monetary penalty was later reduced to $4,000. Avalon contested the agency's determination and requested a hearing on the matter.

On February 28, 2013, a hearing was held before an administrative law judge (ALJ). The ALJ issued her report and recommendation, finding that Avalon had violated various statutory provisions. The ALJ found that Avalon had three judgments entered against it for failure to make payments to subcontractors and suppliers in violation of Minn. Stat. § 326B.84(11) (2012). The ALJ found that by failing to satisfy these civil judgments Avalon had conducted its business in a manner that demonstrated financial

3

irresponsibility in violation of Minn. Stat. §§ 326B.082, subd. 11(b)(9), .84(15) (2012). The ALJ further found that Avalon failed to use various sale proceeds to pay its subcontractor Mellas, violating Minn. Stat. § 326B.84(7). Due to these violations, the ALJ recommended the revocation of Avalon's license and imposition of a $4,000 fine. With respect to Ammerman, the ALJ determined that the commissioner lacked statutory authority to issue a licensing order and a cease-and-desist order against him individually. The ALJ recommended that Ammerman be removed as a party from both orders.

After the ALJ released her report and recommendation, Avalon filed exceptions contesting some of the findings and the recommendation. In its briefing, Avalon raised the defenses of equitable estoppel and waiver for the first time. After Avalon filed its brief, the record closed, and the matter was submitted to DLI's deputy commissioner.

On November 8, 2013, the commissioner issued the agency's final order. The commissioner rejected Avalon's arguments relating to equitable estoppel and waiver, concluding that both arguments were meritless. The commissioner agreed with the ALJ's determination that Avalon had violated Minn. Stat. § 326B.84(7), (11), and (15). The commissioner ordered revocation of Avalon's license and imposition of a $4,000 fine. The commissioner agreed that DLI does not have authority to issue a licensing order or cease-and-desist order against Ammerman individually. The commissioner therefore ordered that the licensing order be amended to remove Ammerman's name. This appeal follows.

4

**D E C I S I O N**

An appellate court may reverse, remand, or modify an agency decision if it determines that the substantial rights of a petitioner have been prejudiced because the administrative finding, inferences, conclusion, or decision are:

> (a) in violation of constitutional provisions; or
> (b) in excess of the statutory authority or jurisdiction of the agency; or
> (c) made upon unlawful procedure; or
> (d) affected by other error of law; or
> (e) unsupported by substantial evidence in view of the entire record as submitted; or
> (f) arbitrary or capricious.

Minn. Stat. § 14.69 (2012). When reviewing an agency decision, appellate courts will "adhere to the fundamental concept that decisions of administrative agencies enjoy a presumption of correctness, and deference should be shown by courts to the agencies' expertise and their special knowledge in the field of their technical training, education, and experience." *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 824 (Minn. 1977).

## I. Equitable Estoppel

Avalon argues that DLI "should be estopped from sanctioning Avalon." When the facts of a case permit more than one conclusion, we review an agency's denial of equitable estoppel as a fact question. *In re Westling Mfg., Inc.*, 442 N.W.2d 328, 331 (Minn. App. 1989). We review factual determinations made within the scope of the agency's statutory authority under the substantial-evidence standard. *In re Application of Minn. Power*, 838 N.W.2d 747, 757 (Minn. 2013). A reviewing court must not substitute its judgment for that of the administrative body when its findings are properly supported

5

by evidence. *In re Denial of Eller Media Co.'s Applications for Outdoor Device Advert. Permits*, 664 N.W.2d 1, 7 (Minn. 2003).

A party asserting equitable estoppel against a governmental entity has a "heavy burden of proof" and must satisfy four elements. *Ridgewood Dev. Co. v. State*, 294 N.W.2d 288, 292-93 (Minn. 1980). First, the party must show that the government agency engaged in "wrongful conduct." *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 25 (Minn. 2011). Second, the party must establish that it reasonably relied on the wrongful conduct. *Id.* Third, the party must incur a "unique expenditure" in reliance on the government's wrongful conduct. *Id.* And fourth, a balancing of the equities must favor estoppel. *Id.*

We begin our analysis by examining the threshold question—whether the government's act or omission that induced reliance was "wrongful." *Id.* An equitable-estoppel defense against a government agency generally requires affirmative misconduct by the agency whose action is sought to be estopped. *Westling*, 442 N.W.2d at 332. This element has also been interpreted as requiring some degree of malfeasance. *Kmart Corp. v. Cnty. of Stearns*, 710 N.W.2d 761, 771 (Minn. 2006). But importantly, an agency does not engage in "wrongful conduct" when its conduct is "simple inadvertence, mistake, or imperfect conduct." *Sarpal*, 797 N.W.2d at 25 (quotation omitted).

Avalon argues that DLI engaged in "wrongful conduct" because it renewed Avalon's license, knowing that civil judgments had been entered against it, and later sanctioned Avalon for these unpaid judgments. In *Sarpal*, the supreme court rejected a similar argument. In *Sarpal*, the city approved building permits allowing a landowner to

6

construct a shed on his property. *Id.* at 21. A year after the shed was constructed, the city determined that the shed encroached upon a trail easement. *Id.* at 22. Attempting to enforce its zoning ordinances, the city ordered the landowner to remove the shed from the trail easement. *Id.* The district court in that case determined that the city provided the landowner with inaccurate documentation, failed to competently review a building-permit application, failed to place the landowner on notice of the error, and ultimately approved an application to construct a shed when it should not have. *Id.* at 26. But the supreme court noted that the district court "did not find, and the record does not suggest, that any of these actions by the City constitutes anything other than a simple mistake." *Id.* Therefore, the supreme court concluded that the landowner failed to establish the first element of his equitable-estoppel defense. *Id.*

We similarly conclude that DLI's conduct does not rise to the level of malfeasance required to satisfy the wrongful-conduct element. At the time that DLI renewed Avalon's license it had begun investigating complaints made against Avalon. But the investigation was not finished. A DLI representative testified as to the process and volume of DLI investigations, noting that at any given time the department has approximately 800 ongoing investigations relating to residential building contractors. That representative also testified that DLI would revoke a contractor's license if its investigation uncovered that a contractor had unsatisfied judgments against it that were not "resolved in some fashion." These judgments could be resolved by full payment, a payment agreement with the judgment creditor, or a discharge in bankruptcy. Although Avalon notified DLI of

7

the judgments entered against it, there is no evidence indicating that, at the time Avalon's license was renewed, DLI knew that these judgments would not be resolved.

And in contrast to the facts in *Sarpal*, Avalon has not demonstrated that DLI provided it with inaccurate information, failed to competently follow its procedures, or approved Avalon's license when it should not have. But even if Avalon had shown that these actions occurred, based on the supreme court's reasoning in *Sarpal*, DLI may have committed a simple mistake rather than wrongful conduct. *See id.* We therefore conclude that the commissioner properly determined that Avalon failed to prove that DLI engaged in "wrongful conduct" by renewing Avalon's license.

Avalon next argues that DLI engaged in wrongful conduct because DLI breached the parties' agreement to allow Avalon to wind down its business without sanction. Avalon contends that Ammerman's undisputed testimony proves that the parties entered into this agreement. The testimony that Avalon relies on occurred at the administrative hearing, and included the following exchange:

> Q: What work has Avalon done since seeking the renewal of its license?
> A: [Ammerman] I thought, through our attorney, that we had an agreement with [DLI] that we would wind—only work on Avalon properties, wind down operations. And if we're not able to make creditors content, that we'd surrender our license. I thought we had that agreement to move forward and do that.

This testimony, which is unresponsive to the question asked, is the only evidence in the record suggesting that an agreement between Avalon and DLI existed. Avalon submitted no written documentation that an agreement was in place, nor did it elicit

8

testimony from the department's representatives that DLI agreed to withhold sanction while Avalon wound down its business. Ammerman's testimony about what he "thought" had occurred, based on conversations through the parties' attorneys, does not establish the existence of an enforceable agreement. After the hearing concluded and Avalon submitted its exceptions, the record closed. *See* Minn. Stat. § 14.61, subd. 2 (2012) (stating that the "record must close upon the filing of any exceptions to the [ALJ's] report and presentation of argument"). The facts in this record do not satisfy Avalon's "heavy burden" of proving that an agreement existed or that an agreement was breached.

Because we conclude that the first element of equitable estoppel has not been satisfied, we need not address the remaining elements. *See Sarpal*, 797 N.W.2d at 27. The facts found by the ALJ and the commissioner are supported by substantial evidence and do not support a conclusion that DLI should be equitably estopped from sanctioning Avalon. Therefore, the commissioner properly rejected Avalon's equitable-estoppel defense.

## II.    Waiver

Avalon argues that DLI waived its right to sanction Avalon when, knowing that Avalon was in violation of Minn. Stat. § 326B.84(11), it renewed Avalon's license. "Waiver is the intentional relinquishment of a known right." *Valspar Refinish, Inc. v. Gaylord's Inc.*, 764 N.W.2d 359, 362 (Minn. 2009). It requires both (1) knowledge and (2) intent. *Ill. Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 798 (Minn. 2004). "Waiver in general is ordinarily a question of fact, and intent to relinquish a known right

9

is rarely to be inferred as a matter of law." *Fedie v. Mid-Century Ins. Co.*, 631 N.W.2d 815, 819 (Minn. App. 2001) (quotation omitted), *review denied* (Minn. Oct. 16, 2001).

Avalon failed to raise the defense of waiver at the administrative hearing. As a result, the ALJ made no findings of fact related to DLI's knowledge or intention to waive its right to sanction Avalon. The commissioner was confronted with this argument after the record had closed. *See* Minn. Stat. § 14.61, subd. 2. The commissioner determined that "there is absolutely no evidence that [DLI] intentionally relinquished any right to take disciplinary action against Avalon when it renewed Avalon's license or at any other time." We agree.

By statute, DLI was authorized to sanction Avalon up to two years after Avalon's license was last effective. *See* Minn. Stat. § 326B.082, subd. 11(d) (2012). The record is devoid of any indication that DLI knowingly and intentionally waived its legal rights under Minn. Stat. § 326B.082, subd. 11(d). On this record, the commissioner properly determined that DLI did not waive its right to sanction Avalon.

### III. Application of Minn. Stat. § 326B.84(7)

Avalon argues that the commissioner erred in interpreting and applying Minn. Stat. § 326B.84(7), which provides:

> The commissioner may use any enforcement provision in section 326B.082 against an applicant for or holder of a license or certificate of exemption, if the applicant, licensee, certificate of exemption holder, qualifying person, or owner, officer, member, managing employee, or affiliate of the applicant, licensee, or certificate of exemption holder:
> . . . .
> (7) has failed to use the proceeds of any payment made to the licensee for the construction of, or any improvement to,

10

residential real estate, as defined in section 326B.802, subdivision 13, for the payment of labor, skill, material, and machinery contributed to the construction or improvement, knowing that the cost of any labor performed, or skill, material, or machinery furnished for the improvement remains unpaid.

Avalon argues that the commissioner failed to make any finding that Avalon knew that Mellas remained unpaid for its labor. On March 27, 2012, Avalon self-reported that it had signed a confession of judgment in favor of Mellas in the amount of $65,000. This settlement concluded a lawsuit that Mellas had brought against Avalon for unpaid debts. Avalon also conceded that at the time of the hearing the $65,000 judgment remained unpaid. We therefore find this argument unpersuasive.

Avalon also argues that Minn. Stat. § 326B.84(7) is a "theft" statute that should apply only to those situations where licensees "improperly stole funds." Avalon reasons that because it used sale proceeds to pay other creditors, it did not engage in "theft." We disagree. Under the plain language of the statute, the commissioner need only find that Avalon "failed to use the proceeds of any payment made to [it] for the construction of . . . residential real estate . . . for the payment of labor, skill, material, and machinery contributed to the construction." *Id.* Mellas worked as an electrical subcontractor, contributing goods and services to seven homes constructed by Avalon. These homes were later sold by Avalon. The commissioner found that the proceeds from these sales were used to pay various creditors, but they were not used to pay Mellas. We conclude that the evidence in the record substantially supports the commissioner's finding and that the commissioner properly interpreted and applied Minn. Stat. § 326B.84(7).

11

## IV.    Naming Ammerman Individually

Ammerman argues that the commissioner and ALJ erred by failing to remove his name from the agency's case caption and by referring to him in their findings of fact. Ammerman also argues that his name must be removed from the case caption of this appeal.

The commissioner ordered DLI to remove Ammerman's name from the licensing order and cease-and-desist order. But the commissioner did not address whether Ammerman's name should remain in the DLI case caption or the case caption of the ALJ's report. We conclude that the commissioner and ALJ did not err by naming Ammerman in the case caption. Ammerman sought relief from the commissioner and the form of relief requested was granted—he was removed from DLI's licensing order and cease-and-desist order. We further conclude that the commissioner did not err by including Ammerman's name in the findings of fact. Ammerman was the sole owner of Avalon, he acted as CFO, and he was registered with DLI as Avalon's "qualifying person." He made financial decisions on behalf of the company, and he sought affirmative relief from the ALJ and commissioner. It necessarily follows that the ALJ and commissioner must include his name and arguments in the context of their decisions.

Finally, Ammerman contends that his name must be removed from the case caption of this appeal. Under the rules of appellate procedure, "[t]he title of the action shall not be changed in consequence of the appeal." Minn. R. Civ. App. P. 143.01. Because the agency listed Ammerman's name in its case caption, the same case caption must be used now.

Because we conclude that Ammerman is properly categorized as a relator and named in the case caption, we affirm the commissioner's order that Ammerman be removed from DLI's licensing order and cease-and-desist order, but remain individually named in its case caption and findings of fact.

**Affirmed.**