*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1696**

James M. Wollschlager,
Appellant,

vs.

Burnsville Volkswagen, Inc., d/b/a Luther Burnsville Volkswagen,
Respondent.

**Filed July 20, 2015
Affirmed
Rodenberg, Judge**

Dakota County District Court
File No. 19HA-CV-12-5509

Patrick J. Sauter, Mark R. Bradford, Daniel R. Olson, Bassford Remele, P.A., Minneapolis, Minnesota (for appellant)

Teri E. Bentson, Law Offices of Thomas P. Stilp, Golden Valley, Minnesota (for respondent)

        Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and

Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

        Appellant challenges the district court's denial of his motion for a mistrial after

respondent's inadvertent violation of a pretrial order in limine. We affirm.

# FACTS

In late September 2010, appellant James Wollschlager was injured at the facilities of respondent Burnsville Volkswagon, Inc. Appellant alleges that, as he walked under an overhead service door at respondent's garage, he was struck atop his head by the descending door. Appellant claims that an employee of respondent negligently pressed a button, causing the door to descend and hit appellant.

Before trial, appellant moved in limine to exclude testimony by Jack Enos, respondent's employee, who testified in a discovery deposition that appellant was wearing a hat at the time of the incident and that the hat caused appellant not to see the door. Respondent argued that the witnesses should be allowed to testify on the disputed fact issue of whether appellant was wearing a hat, and that respondent should be allowed to argue that the hat may have prevented appellant from seeing the door. The district court granted the motion in limine, explaining:

> With regard to the hat, I'll allow people to testify to what they saw. That includes seeing him wear a hat. That'll come in, but they're not to conclude from that that his wearing a hat made it so he didn't see the garage door. That's something counsel can argue certainly.

During respondent's opening statement at trial, counsel alluded to the hat, without objection, asking rhetorically: "Why didn't Mr. Wollschlager see the door close when the two other eyewitnesses saw the door closing? Was it involved with his hat? Was he not paying attention? We're not sure. Think about that when you hear the testimony."

Appellant testified during recross-examination that he was not wearing a hat, but agreed that he had earlier testified at a deposition that he was wearing a hat when he was

2

injured.  Appellant also testified that he corrected this deposition testimony following the deposition. [1]

---

[1] His trial testimony was as follows:

> Q:     Did you have a hat on?
> A:     I don't believe I did.
> Q:     . . . Could you please turn to your deposition on Page 51?  I would like you to go down to Line 17.  My question was, "Do you know if you had a hat on?"  What was your answer, sir?
> A:     "Yes, I did."
> Q:     And the question goes on, "Did the hat have a brim?"
> A:     "Yes, it did."
> Q:     "Like a baseball type of cap?"
> A:     "Yes."
> Q:     So you were wearing a hat on the day of the incident?
> A:     No, I wasn't . . . After I gave the deposition I had an opportunity to review my day planner.  I was assuming that that day when I went to the dealership that I was working from home that day.  It was 9:40 in the morning.  And actually I had, when I looked at my day planner, I had driven out to Delano that morning and had a meeting in the afternoon in St. Paul.  I do not wear a hat to work.  So that's how I'm—that's where the discrepancy is.
>
>         . . . .
>
> Q:     . . . So you had a chance to go back over the transcript and correct any inconsistencies and that was not changed, is that correct?
> A:     I believe at one point it was.
> Q:     So you believe that there is another copy of the transcript out there where somebody is not wearing a hat?
> A:     Yes.

Later, upon redirect examination, appellant's counsel introduced the deposition correction into evidence.  Appellant read the deposition correction into evidence:

3

Appellant's wife was asked during her direct examination, "So if [appellant] had arrived at the dealership from work, would he have worn a hat?" And she responded, "Not coming from work, no. He never wore a hat to work."

During appellant's case-in-chief, Enos was called as an adverse witness. Appellant's counsel asked him, "he would have had to see the door to know to bend his head to try to get under it, according to your interpretation of it, right?" The witness testified, "No. I don't believe he saw the door at all." Enos was then cross-examined by respondent's counsel and testified as follows:

> Q: And you observed the accident?
> A: I did.
> Q: Can you describe to the jury what happened?
> A: I had gone up to the service counter to talk to Jeremy and Jeremy wasn't immediately available for me to get his attention. I had glanced outside and noticed a gentleman coming in towards the door. I looked back to see if I could get Jeremy's attention. He was still busy. When I looked back at the door, I saw a man basically just in time to hit the door, not enough time for me to yell out and say, "Hey, watch out." *He had a hat on so he didn't see the door coming down.* And it was just a really unlucky time, coincidence. He hit the door and dropped, stunned, to his knees. We went over to him. I don't remember exactly who went over, but we definitely immediately asked if he needed assistance, if he was all right.

---

I often wear a baseball type hat when I am outdoors and not working. I don't wear a hat during a work day and in particular if I have a meeting with a client, a municipality, et cetera. I should have thought more before answering the question because my answer should be no. I checked my day planner which indicated I had a work appointment that morning so I would not have been wearing a cap.

> Q: Mr. Enos, was the door closing in the moments before Mr. Wollschlager approached it?
>
> A: Yes. The first time when I looked the door was still. The second time I noticed that it was coming down.

(Emphasis added.) Appellant's counsel then asked to approach the bench and the jury was excused from the courtroom. Appellant moved for a mistrial.

The district court declined to grant a mistrial and gave appellant the option of a curative instruction. Appellant's counsel observed the "untenable position of either emphasizing [the testimony] or waiving it" and reluctantly agreed to the curative instruction. The district court gave the following curative instruction after the jury was brought back into the courtroom:

> Ladies and gentlemen, when the witness said that Mr. Wollschlager, because of the hat, didn't see the door, the witness had no basis or foundation to conclude that; therefore, you're to disregard that particular statement.

The trial proceeded and there was neither any further testimony from Enos concerning what appellant could or could not see, nor any further instructions on the topic from the district court.

Jeremy Hanson, another employee of respondent, testified that he saw appellant "hit the door." Hanson testified that appellant "walked into a garage door as it was closing" and that appellant "tried to get underneath that garage door quickly to be able to follow that car coming in and [he] hit himself in the forehead."

During summation, respondent's counsel twice discussed whether appellant was wearing a hat when he was injured. Respondent's counsel stated, "Mr. Enos said that – he said [appellant] also had a hat on." Later, respondent's counsel stated:

And then, you know, there was a question about whether he had a hat on. I don't think that's a big deal. Mr. Wollschlager said in [his deposition] that he had a hat on. Another witness said he thought he had a hat on. You know, I don't know what role the hat plays, but for some reason Mr. Wollschlager walked into a garage door on September 30th, 2010.

The jury found both appellant and respondent to have been negligent, and assigned 70% of the causal fault to appellant and 30% to respondent. Appellant renewed his objection to the denial of his motion for mistrial, and requested a new trial. The district court denied the motion. This appeal followed.

## D E C I S I O N

A reviewing court will not reverse a denial of a motion for a mistrial absent an abuse of discretion by the district court. *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006). A district court abuses its discretion when it misapplies the law or when the decision rendered is contrary to the record evidence. *City of North Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011). Further, a district court's denial of a motion for a mistrial will not be overturned unless the party challenging the denial can show a "reasonable probability that the outcome of the trial would be different if the event that prompted the motion had not occurred." *Manthey*, 711 N.W.2d at 506 (quotation omitted). "The trial judge is in the best position to determine whether . . . a mistrial should be granted." *Id.*

Appellant argues that a three-part test should be applied in considering whether a mistrial should be granted for violation of an order in limine, arguing that "mistrials are *required* for violating an in limine order if: (1) the order is specific; (2) the violation is

6

clear; and (3) the non-breaching party was prejudiced," citing *Black v. Shultz*, 530 F.3d 703, 706 (8th Cir. 2008) (emphasis added).

Minnesota has not adopted this proposed three-part test. While federal caselaw may be persuasive, it is not binding on us. *State v. McClenton*, 781 N.W.2d 181, 191 (Minn. App. 2010) *review denied* (Minn. June 29, 2010). Further, as an error-correcting court, it is not our proper role to extend existing law. *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987) ("The task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court.") *review denied* (Minn. Dec. 18, 1987). Instead, we apply Minnesota's longstanding abuse-of-discretion standard of review. *See Manthey*, 711 N.W.2d at 506; *Sarpal*, 797 N.W.2d at 24. S*ee also State v. Bahtuoh*, 840 N.W.2d 804, 819 (Minn. 2013) ("We review the denial of a motion for a mistrial for an abuse of discretion because the district court is in the best position to evaluate the prejudicial impact, if any, of an event occurring during the trial.").[2]

Before applying the abuse-of-discretion standard of review to the district court's denial of the motion for mistrial, we first consider the number of violations of the order in limine that occurred at trial. At oral argument, appellant argued that there were *two* violations of the order: the first when Enos said, "No. I don't believe he saw the door at all," and the second when Enos said, in the middle of a narrative response, "He had a hat on so he didn't see the door coming down."

---

[2] Even if we were to adopt appellant's proposed three-part test, we think it noteworthy that the Eighth Circuit, in a case after *Black*, reviewed a district court's ruling concerning an order in limine for an abuse of discretion. *Russell v. Whirlpool*, 702 F.3d 450, 460 (8th Cir. 2012).

The district court's order in limine prohibited lay witnesses from "conclud[ing] . . . that his wearing a hat made it so he didn't see the garage door." The first of the complained-of statements from Enos – "I don't believe he saw the door at all" – did not violate this order. From our review of the record, the parties agree that appellant did not see the door. No claim was advanced by either party that appellant walked into a door that he saw. Enos' first statement, then, merely confirms what was obvious to everyone. But Enos' second statement, that "[appellant] had a hat on so he didn't see the door coming down," did violate the order in limine because it identifies the hat as having been the *cause* of appellant not seeing the descending door.

In denying appellant's mid-trial motion for mistrial and in later denying appellant's motion for a new trial, the district court reasoned that the violation of the order in limine was neither solicited by defense counsel nor repeated during the course of the trial. The district court held that the testimony did not likely influence the jury's decision, noting that it gave a curative instruction. The district court also observed that the jury was properly presented with the available facts concerning the hat and had no need to rely on the witness's prohibited opinion testimony to draw the inference that wearing a hat might have prevented appellant from seeing the garage door.

Appellant argues that the district court's analysis ignores that the prohibited testimony made respondent's theory of the case more believable and that, absent the prohibited testimony, the jury would not have drawn the conclusion that appellant's hat obstructed his view of the garage door. These arguments are of slight significance in light of our deferential standard of review. While it is possible that Enos's testimony

8

made respondent's theory more believable, the district court instructed the jury to disregard the testimony and considered the effect of it with the advantage of being best situated to determine whether it gave rise to a reasonable probability that the testimony affected the outcome of the trial. *See Sarpal*, 797 N.W.2d at 24 (explaining that district court abuses its discretion when it misapplies the law). The district court's conclusion that it was not reasonably probable that the impermissible Enos statement affected the outcome of the trial is supported by the record evidence. *See id.* (explaining that the district court abuses its discretion when it makes findings contrary to the weight of the recorded evidence).

Respondent presented the testimony of two eyewitnesses who testified that appellant walked into the door. Appellant testified that he wore no hat and that the door came down on his head. The jury had to weigh this competing evidence. *See Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 477 (requiring that the evidence be "viewed in the light most favorable to the verdict" (quotation omitted)). Having instructed the jury to disregard the impermissible testimony, the district court's conclusion that the outcome of the trial was unlikely to have been affected by the impermissible Enos testimony was well within the district court's discretion. The district court's curative instruction correctly and explicitly explained that Enos's opinion of what appellant could or could not see "had no basis or foundation." The district court appropriately observed that the jury could have properly inferred from the admissible testimony and the proper argument of respondent's counsel that the hat prevented appellant from seeing the door. Speculating otherwise does not

9

demonstrate an abuse of the district court's discretion.  Jurors are presumed to follow the instructions they are given, including curative instructions like the one given here.  *See State v. Pippitt*, 645 N.W.2d 87, 94 (Minn. 2002).

Appellant next argues that the district court granted the motion in limine to exclude the prohibited testimony because it found that the testimony was unfairly prejudicial and that its later conclusion that the prohibited testimony was not prejudicial is irreconcilable with its earlier conclusion.  Careful examination of the record reveals that the district court made no pretrial conclusion of unfair prejudice in making its in limine order.  Appellant, in his motion in limine to exclude Enos's testimony, argued both that Enos's deposition testimony on causation lacked foundation and that it "would impermissibly confuse the issues to be tried and simultaneously mislead the jury." Appellant cited Minn. R. Evid. 403 for the proposition that otherwise relevant evidence may be excluded if there is a danger that it would confuse the triable issues or mislead the jury.  Appellant did not expressly argue that the probative value of Enos's testimony was outweighed by unfair prejudice.  Respondent argued in response that evidence of appellant wearing a hat should be admissible, but agreed that testimony by Enos regarding the cause of the accident lacked foundation.  On this record, the district court summarily granted the motion, stating:

> With regard to the hat, I'll allow people to testify to what they saw.  That includes seeing [appellant] wear a hat.  That'll come in, but they're not to conclude from that that his wearing a hat made it so he didn't see the garage door.  That's something counsel can argue certainly.

10

In short, the record does not support appellant's argument that the district court's order in limine was premised on unfair prejudice. Rather, the record reflects that appellant argued that Enos's testimony lacked foundation, an assertion with which respondent agreed. The district court granted the motion in limine, but allowed argument by counsel concerning the effect of the hat. We see no conflict between the district court's pretrial and post-trial orders.

Finally, appellant argues that the district court's order is contrary to the law. Appellant argues "the district court's determination that no prejudice occurred contravenes longstanding Minnesota law looking dimly on parties offering speculative theories through fact witnesses," citing only *State v. Ray*, 659 N.W.2d 736, 744 (Minn. 2003). In *Ray*, the Minnesota Supreme Court reversed a criminal verdict and granted a new trial because the prosecution entered into evidence statements given by the defendant after he had unequivocally invoked his right to counsel. 659 N.W.2d at 742-43. In its opinion, the Minnesota Supreme Court states: "Because we have reversed Ray's conviction and granted a new trial on the grounds that it was prejudicial error to admit parts of his statement, we need not decide whether Ray's claims of prosecutorial misconduct also constitute prejudicial error that would independently warrant a new trial." *Id.* at 744. The supreme court, in dicta, reached those issues anyway, one of which was whether a new trial should be granted after a witness gave testimony prohibited by a motion in limine. *Id.* at 744-46. The supreme court held that the prosecutor improperly, repeatedly, and purposefully elicited the prohibited evidence after the motion in limine had been granted *and* after the prosecutor had once been warned that

11

the testimony was prohibited. *Id.* at 744-45. The supreme court in *Ray* cautioned the prosecutor not to elicit any similar testimony on remand. *Id.* at 745-46.

The holding in *Ray* is inapposite because the facts of *Ray* are readily distinguishable. The district court here found that Enos's testimony was not purposefully elicited. There is no basis on which to conclude that this finding was clearly erroneous. Unlike *Ray*, the testimony here was not repeated through the trial. It appeared once, in the middle of a narrative answer to an open-ended question. The jury was told to disregard the testimony, and was informed that the testimony was (as common sense would already have informed them) without any foundation, as a witness cannot say what another person saw or did not see.

Finally, and importantly, we observe again that the district court was best positioned to determine the effect of the prohibited testimony. *Manthey*, 711 N.W.2d at 506. The district court found that the statement likely did not prejudice the jury. After reviewing the record, it is clear to us that the district court acted within its discretion in so finding.

**Affirmed.**